423 A.2d 398

COMMONWEALTH of Pennsylvania, Appellant,

v.

Lynette BEARD.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Marvin D. JONES.

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed Dec. 5, 1980.

584

Charles W. Johns, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant at Nos. 1147 & 1148.

Bruce A. Carsia, Pittsburgh, for appellee, at No. 1147.

Marvin D. Jones, appellee, in propria persona, at No. 1148.

Before CERCONE, President Judge, and MONTGOMERY and LIPEZ, JJ.

MONTGOMERY, Judge:

This is an appeal by the Commonwealth from an order suppressing evidence secured by the execution of a search warrant.[1] The evidence adduced at the suppression hearing reflects the following facts. On November 15, 1977, the Pittsburgh Police obtained a warrant to search the first floor apartment at 6756 McPherson Boulevard. The search warrant was issued in the names of both appellee Marvin Jones and appellee Lynette Beard. When the police arrived

1. The Commonwealth's appellate rights have vested in the instant case pursuant to the standards enunciated in *Commonwealth v. Kunkel*, 254 Pa.Super. 5, 385 A.2d 496 (1978).

on the scene, they knew Lynette Beard to be present inside the apartment. Based on a tip that Jones would be arriving shortly to cut and package heroin, the forestalled execution of the search warrant. Instead, they stationed themselves around the corner and began surveillance of the premises. Approximately one-half hour later, Jones drove up to the apartment and alighted from his vehicle. The detectives immediately approached in their vehicle and jumped out. As Jones reached the porch, he recognized the police and ran inside the dwelling, closing the door.[2] By this time, the detectives were right behind Jones. They burst through the closed door, and arrested him as he attempted to flush something down the toilet. Several packages of heroin were found nearby. After arresting Jones, appellee Beard was informed of the search warrant. She was subsequently arrested when drugs and related paraphernalia were discovered in the apartment.

The provisions of the Fourth Amendment to the Constitution of the United States are designed to protect our citizens against unreasonable searches and seizures. The issuance of a search warrant, making it lawful to conduct a search within the limits of the facts as stated on the face of the warrant, serves as evidence of the reasonableness of a search. However, even the presence of a search warrant does not render every search pursuant to such a warrant reasonable.

Pa.R.Crim.P. 2007(a) provides, in part, that:

"[a] law enforcement officer executing a search warrant shall before entry, give or make reasonable effort to give, notice of his identity, authority, and purpose . . . unless exigent circumstances require his immediate forcible entry."

2. There was conflicting testimony at the suppression hearing as to whether the detectives announced their identity while chasing Jones or whether he shouted, "It's the police," upon seeing them. We are sufficiently persuaded, nonetheless, that their identity was either known or made known to Jones.

Thus, prior to making a forcible entry, the officer must, absent exigent circumstances, announce his identity and purpose to provide the occupant with a reasonable opportunity to surrender his privacy. *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971), *Commonwealth v. Easton*, 231 Pa.Super. 398, 332 A.2d 448 (1975). "The purpose of this announcement rule is that '. . . the dignity and privacy protected by the fourth amendment demand a certain propriety on the part of policemen even after they have been authorized to invade an individual's privacy.'" *Commonwealth v. DeMichel*, supra, 442 Pa. at 561, 277 A.2d at 163, quoting *United States ex rel Ametrane v. Gable*, 276 F.Supp. 555, 559 (E.D.Pa.1967) aff'd, *United States ex rel Ametrane v. Gable*, 401 F.2d 765 (3rd Cir. 1968).

This announcement requirement not only reflects the undiluted respect in which we hold an individual's right to privacy, but it also serves to reduce the potential for violent confrontations between officers and occupants and to guard against needless destruction of private property. *Commonwealth v. Duncan*, 257 Pa.Super. 277, 390 A.2d 820 (1978), appeal dismissed, *Commonwealth v. Duncan*, 485 Pa. 340, 402 A.2d 662 (1979). *Commonwealth v. Perry*, 254 Pa.Super. 549, 386 A.2d 86 (1978), *United States v. Bustamante–Gamez*, 488 F.2d 4 (9th Cir. 1973), cert. denied, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1973).

As stated above, the requirement of announcing both identity and purpose is only waived if exigent circumstances are present. Although exigent circumstances must be determined on a case–by–case basis, certain factual situations have been found to warrant a waiver of the "knock and announce" rule. These include when there is a possibility of harm to the officers or occupants of the premises, *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975), *Commonwealth v. McKeever*, 229 Pa.Super. 35, 323 A.2d 44 (1974); where unusual activity leads to a reasonable belief that evidence is being destroyed, *Commonwealth v. Harper*, 233 Pa.Super. 294, 334 A.2d 761 (1975), *Ker v. State of California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963);

or where the police have valid grounds for being virtually certain that the persons inside the premises to be searched already know the identity and purpose of the police. In such a case, useless gestures by the police are unnecessary. *Commonwealth v. Fisher*, 223 Pa.Super. 107, 296 A.2d 848 (1972), *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

■ In light of the above case law, our initial concern must therefore be whether the facts of the instant case qualify as an exigent circumstance, excusing the police from the need to knock and announce their identity and purpose. The lower court agreed with the Commonwealth that the presence of exigent circumstances in this case vitiated the need for the police to knock and announce. The fact that Jones recognized the police and upon doing so, fled into the residence is sufficient evidence that he knew the identity and purpose of the police. Thus, the police had valid grounds for being virtually certain that Jones had ascertained their purpose and would attempt to destroy the evidence of narcotics. In such circumstances, noncompliance with the knock and announce requirement is excused for police need not make useless gestures.

The lower court nonetheless suppressed the evidence on the basis that the exigent circumstances were created by police conduct to achieve this very purpose of foregoing the knock and announce rule. As such, the police actions circumvented the appellees' constitutional right to be informed of the officers' identity and purpose and to voluntarily surrender their privacy. The lower court held the execution of the search warrant to be unlawful. We must agree.

As the lower court aptly stated the issue:

"[t]he crux of the matter centers upon whether exigent circumstances, when prompted by the dilatory tactics of police in executing a search warrant .... vitiates an unannounced entry, arrests, and evidence seized as a result thereof?"

The police were in receipt of a valid search warrant, the execution of which would require knocking and announcing both identity and purpose and giving the occupants a reasonable time in which to surrender their privacy. Instead of fulfilling the mandate of Pa.R.Crim.P. 2007, the police decided to wait for Jones and surprise him just as he was entering the premises to be searched. The police arrived at the premises, parked a short distance away, and began a surveillance which lasted approximately one–half hour.[3] Herein, the police knew Jones from prior police involvement, and knew that he would recognize them on sight. As experienced narcotic detectives, the police must certainly have realized that Jones would run inside the house upon seeing them drive up to the premises and jump out of their vehicle.

The police had no lawful right, pursuant to an arrest, to chase Jones. As Officer Laurene Taliaferro testified on cross–examination by the defense counsel at the suppression hearing:

Q. "You said you were chasing him."

A. "I was. He seen me and started running. He was on his way to the house."

Q. "He wasn't doing anything illegal, was he?"

A. "No, I didn't observe him do anything."

. . .

Q. "You were trying to catch him?"

A. "Yes."

Q. "For what reason?"

A. "We were going to get in the house. I wanted to get in the house and he ran and slammed the door."

Thus, although the police had no probable cause to chase or arrest him, his immediate proximity to the premises to be searched and his flight from the police and into the house

**3.** The officers also cited as a reason for their half hour wait the fact that there were numerous school children in the vicinity. However, we must consider this an argument of mere convenience, since the detectives "took off down to the residence ..." as soon as they noted the approach of Jones, according to Officer Joseph Joiner.

constituted sufficient reason for the police to chase after him.

The deliberate tactics of the police in this instance resulted in the creation of an opportunity to effectuate a forcible entry and to forego the knock and announce rule. The police's furtive conduct in the instant case may in some way be compared to the use of ruse or subterfuge, which as such has received the approval of this court, but only when used to achieve peaceful entry after proper announcement has been made. As we recently held in *Commonwealth v. Regan*, 254 Pa.Super. 555, 559, 386 A.2d 89, 91 (1978):

> "The use of ruse to initiate execution of a search warrant is permissible where it is followed by an announcement of authority and purpose and by *peaceful* entry." (Emphasis Added).

We believe that G. Robert Blakely clarified the importance of peaceful entry pursuant to a search warrant when he wrote:

> " ... the general rule properly becomes not that the announcement should be made, but that entry should be peaceful. Forcible entry becomes then the exception, and following the traditional analysis, the burden lies on him who would bring it into play to establish the necessity for it." *Rule of Announcement and Unlawful Entry: Miller v. United States and Kerr v. California*, 112 U. of Pa.L. Rev. 499, 558 (1964).

We are unconvinced that the police established the necessity of accosting Jones outside of the premises. In point of fact, the police could have easily waited until he entered the premises before they approached.[4] Then, the police could have knocked and announced their identity and purpose and given the appellees the opportunity to surrender their privacy peacefully. That is exactly the method employed by the

---

4. The lower court also viewed the delay in executing the search warrant as a ploy which enabled the police to make an arrest under the guise of serving the search warrant. This court, however, does not find offensive the fact that police wait a reasonable time to execute a search warrant until they are certain that the named individuals are present.

police in *United States v. Singleton*, 439 F.2d 381 (3rd Cir. 1971). Therein, the police had obtained a search warrant for a co–occupied dwelling which was the site of drug transactions. The police arrived at the scene and began surveillance until Singleton arrived and *entered* the premises. After he was in the house for approximately ten minutes, the police went about executing the search warrant.

The police in the instant case could have followed the same steps taken by the police in *Singleton*. Instead, they staged a scenario so that Jones would bolt into the house, enabling the police to dispense with the procedural safeguards inimical to a constitutional execution of a search warrant. The use of dilatory tactics by the police to achieve forcible entry at the expense of constitutional safeguards is too high a cost to pay for whatever results may be achieved.

Order affirmed.

CERCONE, President Judge, files a dissenting opinion.

CERCONE, President Judge, dissenting:

I dissent.

Although I agree in general with the majority's restatement of the law applicable to the execution of search warrants, I cannot agree that the facts of this case show an attempt by the police to skirt the knock and announce rule. The majority holds that the evidence in this case may be suppressed because it was tainted by the illegal method by which the officers executed the search warrant. This goes too far. The majority believes that the police created the exigent circumstance to enable them to enter the house forcibly and seize the evidence before Beard or Jones had a chance to destroy it. By the same reasoning, in almost every instance involving the potential destruction of evidence, and the police effort to prevent destruction, the police will have created such an exigency requiring the fruits of the search to be suppressed. The officers need not have executed the search warrant immediately upon its issuance, that is, there was no constitutional infirmity created by

waiting for Jones' imminent arrival, nor in anticipating the possibility of Jones' flight into the house to destroy the evidence. The exigency in this case was not created by the police any more than it is in any other case involving the destruction of evidence.

I would reverse the finding of the suppression court.