446 A.2d 246

**COMMONWEALTH of Pennsylvania,**

v.

**Clarence A. NORRIS, Sr., Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 21, 1982.

Decided June 1, 1982.

310

John W. Packel, Chief, Appeals Div., Leonard Sosnov, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Marianne Cox, Asst. Dist. Attys., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

A jury convicted appellant of rape, statutory rape, kidnapping, corruption of a minor and possession of an instrument of crime in a related series of occurrences involving a twelve year old girl.

The Superior Court affirmed his judgments of sentence. We granted review on a petition questioning the presence of exigent circumstances to justify a warrantless arrest on forcible entry into defendant's apartment and alleging reversible error in the refusal to suppress a knife in plain view and a gun found under a mattress in a search incident to the arrest.

■ Upon such review we find both the arrest without a warrant and the forcible entry were justified under the law then in effect,[1] that the suppression court had before it evidence from which it could and did infer the knife was in plain view and that the admission of the gun, though improper, was harmless error because it had a *de minimis* prejudicial effect on defendant. We therefore affirm.

At the time the police made the warrantless arrest, they had been refused entry to an apartment a lady across the hall had told them was occupied by Clarence Norris and his brother. It had the same number as the apartment the victim had told them she was forcibly taken to at knifepoint. The victim also told the police that her assailant had been called Clarence by a person in the building and the building itself matched her description.

She had given this description to police in an interview the evening of the crime, shortly after she had become hysterical and hung up after appellant had called her at home. The

---

1. *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177, (1978) *cert. denied*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980) which established a warrant requirement for arrests in the home in this Commonwealth was held to apply only to arrests occurring after November 18, 1978, when it was handed down. *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) announced the same warrant requirement under federal law prospectively. Appellant was arrested May 29, 1976. At that time, the requirement for a warrantless arrest in the home was a showing of probable cause. Although it is not necessary for us to address this issue, since appellant has argued only the absence of exigent circumstances under *Williams*, we note that the facts surrounding the arrest, set forth below in this opinion, clearly amount to probable cause. *See Commonwealth v. Flewellen*, 475 Pa. 442, 380 A.2d 1217 (1977) (upholding warrantless arrest against a contention that it was made without probable cause).

appellant had informed her he would wait for her at school the next day and had threatened her for the second time with harm if she reported the rape.

Appellant argues that the forcible entry by the police into his apartment, after an announcement of authority but without an express announcement of purpose, was unlawful.

■ This contention is devoid of merit. It is well-established that "[a]n announcement of both authority and purpose is required before a door can be broken down, absent exigent circumstances." *Commonwealth v. Newman*, 429 Pa. 441, 444, 240 A.2d 795, 797 (1968). In this case, the police arrived at appellant's door around midnight and noticed that the apartment was lighted and that loud music could be heard coming from inside. The police knocked, identified themselves, and, receiving no response, called headquarters and waited twenty minutes for a back-up unit to arrive before forcibly entering the apartment. It is undisputed, however, that there was no announcement of purpose.

■ We are satisfied in this case that the officers' partial noncompliance with the "knock and announce" requirement was justified by the presence of exigent circumstances. We recognize that only a limited number of circumstances can be considered to excuse compliance with this Fourth Amendment protection.[2] *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1967); *United States v. Wylie*, 462 F.2d 1178, 1186 n. 53 (D.C.Cir.1972); *Commonwealth v. Beard*, 282 Pa.Super. 583, 423 A.2d 398 (1980). These are (1) "when the officers may in good faith believe that they or someone within are in peril of bodily harm." *Miller v. United States*, 357 U.S. 301, 309, 78 S.Ct. 1190, 1196, 2 L.Ed.2d 1332 (1957); (2) when the officers have a basis for assuming that a suspect is "armed or might resist

**2.** The exigent circumstances set forth in *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970) and adopted by this Court in *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980) which have been held to justify the failure to obtain an arrest warrant, are not entirely coextensive with those exigencies which justify noncompliance with the "knock and announce" rule.

arrest." *Sabbath v. United States*, 391 U.S. at 585, 88 S.Ct. at 1759; (3) when there is "some affirmative indication to support a belief that evidence is being destroyed." *Commonwealth v. Clemson*, 234 Pa.Super.Ct. 191, 194 n. 1, 338 A.2d 649, 650 n. 1 (1975); *Miller v. United States; Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795 (1968); (4) when there are similar indications that "the person to be arrested is fleeing." *Miller v. United States*, 357 U.S. at 309, 78 S.Ct. at 1196; *Commonwealth v. Newman*; or (5) when "the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture." *Miller v. United States*, at 310, 78 S.Ct. at 1196; *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. Newman; Commonwealth v. Fisher*, 223 Pa.Super.Ct. 107, 296 A.2d 848 (1972).

Without question, the police in this case had reason to believe that the suspect was armed and might resist arrest, thus increasing the officers' peril. *See United States v. Scott*, 520 F.2d 697 (9th Cir. 1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976); *Gilbert v. United States*, 366 F.2d 923 (9th Cir. 1966), *cert. denied*, 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370 (1967). Moreover, the police had a legitimate basis for being virtually certain that appellant already knew the purpose of their visit and that an announcement would have been a useless gesture. The police were aware in this instance that just a few hours before, appellant had telephoned the victim and threatened to harm her if she reported the crime to the police. Thus, when the police arrived, knocked on the door, identified themselves and received no response, they were justified in concluding that appellant was inside, was not going to respond and was aware of the officers' presence and purpose. The failure of the officers to expressly announce their purpose prior to entry was therefore justified. *Cf. United States v. Wylie*, 462 F.2d 1178 (D.C.Cir.1972). (There, minutes after a purse-snatching, police were directed by eyewitnesses to the suspect's residence. After five minutes of

shouting "Police officers, open up," a forcible entry ensued. The suspect was found hiding within the residence. The court held that an announcement of purpose would have been a useless gesture). The twenty minute delay, considered by the dissent conclusively to preclude a finding of exigency, is indicative of nothing more than an extremely cautious and circumspect approach to a potentially violent situation and in no way vitiated the underlying exigency.

■ With regard to appellant's second contention, since the arrest was lawful, it is well settled that police could make a search incident to that arrest, of those areas from which they might expect danger, for the purpose of insuring themselves against such danger. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Bess*, 476 Pa. 364, 382 A.2d 1212 (1978).

■ Here the police had every reason to believe a firearm was available to the occupants of the apartment and that one of its usual occupants, appellant's brother, whom appellant had implicated in his threats of harm to the victim, was unaccounted for in the living room. To expect these officers to turn their backs on the bedrooms is to expect too much. They therefore had a right to enter the bedroom to insure their safety from that quarter. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The officers, thus having a right to enter the bedroom, were in a lawful position to see and to seize whatever instruments of crime were in plain view from that position.[3] *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (dictum). *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). *Commonwealth v. Tome*, 484 Pa. 261, 398 A.2d 1369 (1979). The knife was an instrument of the crime. It was in plain view on the bedroom nightstand. The fact that Detective Stasiak, the first offi-

---

**3.** They also had a right to seize such evidence they had probable cause to believe would aid in conviction. *Warden v. Hayden*, 387 U.S. at 307, 87 S.Ct. at 1650. Since there was clear probable cause to believe the clothes, blankets, etc. would aid in conviction, this also disposes of defendant's arguments on their admissability.

cer to enter the bedroom, did not see it does not make Detective Strunk's observation of it when he entered other than inadvertent.[4]

Since the police had a right to enter the bedroom both to insure their own safety and to obtain evidence in plain view they had probable cause to believe would aid in conviction, they had a right to seize the knife one of them saw in plain view when he entered that bedroom. Since the exigencies of the situation had already justified the intrusion into the bedroom without a warrant, the suppression court properly inferred that seizure of the knife from the table, where it was in plain view, did not broaden the scope of the intrusion.

 The situation with respect to the gun found under the mattress, however, is different. In fact, that difference nicely points up the distinction between the proper bounds of an exigent warrantless search and its incremental extension into an unreasonable intrusion. The gun could not have been seen without a thorough search of the bedroom. That search occurred after defendant was securely held and after it was apparent there was no one else in the apartment to endanger the officers. The failure to suppress it and its use at trial were, therefore, in error. Indeed, the Superior Court so found and the Commonwealth concedes it here. Nevertheless, we are satisfied such error was harmless under the test announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and adopted by this court in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978)[5]

**4.** Stasiak was interested in the clothing and bedding he had seen from the living room. Stasiak asked this be catalogued and bagged before seizure. Such precautions were proper. It was apparently while this was lawfully taking place that Strunk, lawfully present, saw the knife.

**5.** To qualify as harmless the appellate court must be satisfied "beyond a reasonable doubt" that the error did not influence the jury in its finding of guilt. While the use of such a standard might seem more appropriate to apply to a fact finder's judgment than that of an appellate court judging errors of law, we are, nevertheless, required to follow it, at least in applying the federal constitution *Chapman v. California, supra.*

for all error, both that based on a violation of the constitution, and of law.[6]

Under the test adopted by this court in *Commonwealth v. Story, supra,* evidence improperly admitted can be treated as harmless on any one of three grounds, namely, that the evidence of guilt, without regard to the tainted evidence, is so overwhelming that conviction would have followed beyond a reasonable doubt without regard to it, that the tainted evidence was merely cumulative of other proper persuasive evidence on the issue for which it is offered, or that it was so slight or tangential in its effect that its influence on the jury can be determined to have been *de minimis.*

While the untainted evidence against this defendant is, indeed, overwhelming, we prefer not to rest our holding on that ground in the light of the *Story* analysis because the overwhelming evidence against defendant was contradicted by him, albeit somewhat incredibly, when he took the stand and denied commission of the criminal acts with which he was charged.[7]

Since the jury had properly before it strong and varied proper evidence of defendant's use of deadly weapons to overcome his twelve year old victim's resistance, it would be possible to analyze the effect of the gun in this case as merely cumulative. The victim testified he had threatened her with a gun and a knife, he admitted the knife was his

6. The application of a single test to both constitutional errors and those of law reduces the issues in this case since the admission of the gun is attacked as improper under both the Fourteenth Amendment to the Federal Constitution incorporating the Fourth Amendment prohibition of unreasonable searches and the general law relating to relevancy.

7. In the light of our conclusion that the error here was *de minimis,* we need not decide whether overwhelming evidence can ever overcome an erroneous admission if defendant presents any evidence from which his lack of participation in the criminal conduct charged can be inferred. We have already held the overwhelming evidence test can be applied where the contradictory evidence goes only to *mens rea. Commonwealth v. Thornton,* 494 Pa. 260, 431 A.2d 248 (1981).

and that he had seen the gun which was improperly admitted, although he denied it was his and that it was used to threaten the victim. The victim herself corroborated him in this last denial by testifying it was not the gun she had seen and she pointed out the differences between the two.[8]

However, on the facts of this case we prefer to ground our holding that the improper admission of the gun was harmless on the *de minimis* effect it must have had on the jury on all the charges except possession of an instrument of crime. In *Commonwealth v. Settles*, 442 Pa. 159, 275 A.2d 61 (1971) this court, in an opinion by the present Chief Justice, held the improper admission of a pocketknife in a case where the defendant admitted *shooting* the victim six times was harmless error. This case is cited as an example of *de minimis* error in Justice Robert's opinion for the Court in *Commonwealth v. Story, supra*, 476 Pa. at 410 n. 18, 383 A.2d at 165 n. 18. In *Commonwealth v. Fay*, 463 Pa. 158, 344 A.2d 473 (1975), the admission of a gun seized in violation of a defendant's constitutional rights was also held to be harmless error.

Here the gun was irrelevant on all the charges but possession. In fact the victim, the prosecution's key witness, repudiated the gun offered at trial and described another gun as the one stuck in her side. Defense counsel utilized this testimony in his closing to attack the credibility of the victim's testimony.

The improperly admitted gun was largely irrelevant, if not cumulative, entirely tangential to the issues on rape, statutory rape and corruption and apparently inconsistent with the other prosecution evidence. As such it was *de minimis* on those charges and we so hold.

 Finally, appellant, citing *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976), alleges that because his

8. The victim testified that the gun she was threatened with in the park was white and silver, while the gun introduced at trial was brown and grey.

convictions for rape and corruption of a minor arose from the same act of sexual intercourse, the imposition of separate though concurrent sentences for these distinct crimes constitutes error.[9] Appellant thus argues that the sentences are duplicitous and, therefore, violative of the double jeopardy clause of the United States Constitution. This claim is without merit. Clearly, unlike the situation in *Walker*, the Commonwealth suffered two injuries from appellant's single act in that appellant not only engaged in forcible intercourse with an individual who was not his spouse,[10] but also corrupted the morals of a child under the age of eighteen.[11] Nor does the imposition of separate sentences in this instance violate the "same offense" doctrine first articulated in *Blockburger v. U. S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981).

Judgments of sentence affirmed.

**9.** The Commonwealth contends that this issue has been waived, since appellant raised it for the first time in the Superior Court. However, because appellant challenges only the legality of the sentences imposed on these convictions, and not the validity of the convictions themselves, the claim has not been waived. *Commonwealth v. Walker, supra.*

**10.** The crime of rape is defined, in relevant part, as follows:
A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:
(1) by forcible compulsion;
(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
. . . .
18 Pa.C.S.A. § 3121.

**11.** Corruption of minors was defined, in relevant part, as follows:
(a) Offense defined.—Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any child under the age of 18 years, or who aids, abets, entices or encourages any such child in the commission of any crime, or who knowingly assists or encourages such child in violating his or her parole or any order of court, is guilty of a misdemeanor of the first degree
. . . .
18 Pa.C.S.A. § 3125 which was in effect at the time of defendant's offense was repealed and reenacted as amended by the Act of July 1, 1978, P.L. 573, No. 104, eff. August 30, 1978, 18 Pa.C.S.A. § 6301.

O'BRIEN, C. J., filed a dissenting opinion.

ROBERTS, J., filed a dissenting opinion in which FLAH-ERTY, J., joins.

O'BRIEN, Chief Justice, dissenting.

I cannot agree with the majority that appellant's arrest was lawful and so I must dissent.

The testimony at trial reveals the following facts incident to appellant's arrest. Appellant, armed with a knife and a gun, kidnapped a young girl from a park, led her back to his apartment, and raped her. After he assaulted her, appellant walked the victim to a bus stop, gave her busfare, and sent her home. Later that evening, appellant called the victim on the telephone and threatened her with more harm should she report the incident. The victim thereafter informed her family, who immediately contacted the police. A detailed description of appellant, his clothing, his apartment building, and his apartment number was provided by the victim to the police. That same night, at approximately 11 p. m., police detectives drove to appellant's apartment building and went to apartment 12, the scene of the attack.

Although the police detected loud music and lights emanating from the apartment, there was no response to their knocking. A woman who lived across the hall informed them that someone fitting the description of the suspect resided there. The detectives thereafter called for a back-up unit; after it arrived, the police knocked for several more minutes, announcing who they were. After meeting with no response, a detective forced open the door and arrested appellant.

Initially, I must note my agreement with the majority that a warrant was not required for an arrest in the dwelling place prior to our ruling in *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978). In *Commonwealth v. Miller*, 490 Pa. 457, 473, 417 A.2d 128, 137 (1980), we announced that the *Williams* rule applied only to arrests made subsequent to the date of that decision, November 18, 1978. Since appellant herein was apprehended on May 29, 1976, he

cannot argue that his arrest was defective for want of a warrant. However, even prior to the *Williams* decision, forcible entries into private residences to effectuate arrests had to be justified by exigent circumstances. Unless such circumstances were present, an individual was protected by the Fourth Amendment requirement that police knock and announce their identity and purpose prior to executing a forcible entry. The protection afforded by this amendment applies to all invasions of privacy, whether defined by a warrant or not.

In *Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795 (1968), we held that even when armed with both a body warrant and a search warrant, the police must comply with the Fourth Amendment. In that case, the detectives arrived at appellant's premises, banged on the door, and announced their identity in a loud voice. The police then forced their way through the door after receiving no response. We announced in *Newman* that forcible entry without announcement of purpose violated the Fourth Amendment prohibition against unreasonable search and seizure. *See also Commonwealth v. Dial*, 445 Pa. 251, 285 A.2d 125 (1971). In doing so, we relied upon *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), wherein the Supreme Court of the United States ruled that the petitioner could not be lawfully arrested in his home by officers breaking in, without first receiving notice of their authority and purpose. In *Miller*, the police had identified themselves, but had failed to make an express announcement of their purpose. The United States Supreme Court noted that "[t]he burden of making an express announcement is certainly slight." Id. at 309, 78 S.Ct. at 1196.

It is undisputed that the existence of exigent circumstances would justify entry without proper announcement. In *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the United States Supreme Court upheld a forcible entry which was not preceded by an express announcement of authority or purpose by the police. The non-compliance was not fatal to the arrests and evidence seized in *Ker*, but

was justified because of the defendant's furtive conduct in eluding police shortly before the arrest.

Various other factors can obviate the knock and announce requirement, including those situations where the police have valid grounds for being virtually certain that the resident knows their purpose. *Commonwealth v. Newman, supra.* In *Commonwealth v. Williams, supra,* this Court enumerated other circumstances which may constitute exigent circumstances by adopting the factors considered in *Dorman v. United States,* 435 F.2d 385 (D.C.Cir.1970). These factors included: (1) whether a grave offense is involved, (2) whether the suspect is reasonably believed to be armed, (3) whether there is clear probable cause to believe that the suspect committed the crime, (4) strong reason to believe that the suspect is in the premises being entered, and (5) a likelihood that the suspect will escape if not swiftly apprehended. *Dorman v. United States, supra* at 392–93.

The Commonwealth argues, and the majority agrees, that because the police knocked on appellant's door for approximately twenty minutes, identified themselves as police, and received no response, an announcement of purpose would have been a useless gesture. Moreover, the prosecution asserts that a substantial possibility existed that appellant could escape or destroy evidence if they waited any longer. Finally, the Commonwealth contends that appellant must have been aware of the purpose of the police because of his earlier telephoned threat to the victim.

No one could argue that a twenty-minute wait was anything but reasonable. In fact, this Court has never demanded such a lengthy wait, but only a sufficient period for the police to have formed a reasonable belief that the occupants did not intend to permit peaceful entry. *See Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971). Consequently, I do not disagree with the detective's decision not to forestall entry any longer.

However, the detectives advanced no reasons as to why they did not announce their purpose. Time constraints clearly would not have prohibited such a statement. More-

over, there was no indication to police that appellant evidenced his awareness of their purpose by destroying evidence or attempting escape. The police testified that, although they heard loud music, they heard nothing else. No matter what exigent circumstances the police could cite to justify their omission, the fact of the matter is that they were willing to wait for twenty minutes until the back-up unit arrived before they effectuated a forcible entry. Thus, the same circumstances which dictated their decision to wait, deflate the arguments advanced by the Commonwealth as to why no announcement of purpose was made. As stated above, the burden of this requirement is slight.

It is uncontested that there was no announcement of purpose in the instant case. Yet at the time of appellant's arrest, the law clearly required that before a police officer enters a private dwelling to conduct a search or make an arrest, he must give notice of both his identity and purpose. *Commonwealth v. Newman, supra; United States ex rel. Ametrane v. Gable,* 276 F.Supp. 555 (E.D.Pa.1967). As the Supreme Court of the United States observed:

> "We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application."

*Miller v. United States, supra,* 357 U.S. at 313, 78 S.Ct. at 1197.

I do not believe that the police were excused from announcing their purpose prior to achieving the entry in this

case. No evidence supports their "grudging application" of the knock and announce rule. I would hold that the arrest was illegal and suppress all evidence seized resulting therefrom.

ROBERTS, Justice, dissenting.

The majority has erroneously treated two separate, independent searches of appellant's bedroom as one and hence has erroneously concluded that evidence in "plain view" was constitutionally obtained. The knife which the victim identified at trial as having been used by appellant was recovered by police not during a protective search "to insure their safety" but during the same unjustified search of the bedroom which the majority holds resulted in the unconstitutional seizure of the gun. The conclusion is inescapable that not simply the gun but also the knife seized during that search was unconstitutionally obtained and that the admission of both of these weapons into evidence was reversible error. Thus I dissent.

Three police officers entered appellant's apartment to arrest him. While two officers remained in the living room with appellant, Detective Stasiak made a cursory search of appellant's bedroom. Detective Stasiak testified that during this search he saw "[j]ust the clothing and the fenders." [1] Detective Stasiak did not see the knife nor did he personally seize any evidence. Detective Stasiak returned to the living room, where he made a telephone call requesting "the crime lab to be sent to our location." [2] After this telephone call, Detective Stasiak and Detective Strunk undertook a search of "pretty much the whole apartment" [3] while the third officer remained with appellant. It was during this second search, which Detective Stasiak testified was "in search for the gun," [4] that Detective Strunk entered appellant's bed-

1. Notes of Testimony at 86.

2. Id. at 66.

3. Id. at 101.

4. Id. at 84.

room. Detective Strunk looked under the mattress, where he found and seized the gun. At the same time he also discovered and seized the knife which was lying on the nightstand by the bed.

The Supreme Court of the United States has made clear that "plain view *alone* is never enough to justify the warrantless seizure of evidence." *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971) (emphasis in original).

> "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused."

Id. at 446, 91 S.Ct. at 2038. See *Byars v. United States*, 273 U.S. 28, 29, 47 S.Ct. 248, 248, 71 L.Ed. 520 (1927) ("[a] search prosecuted in violation of the Constitution is not made lawful by what it brings to light"). On this record, as the majority properly recognizes, there was no justification for the "thorough search of the bedroom." As the majority states, this warrantless intrusion "occurred after defendant was securely held and after it was apparent there was no one else in the apartment to endanger the officers." 446 A.2d at 250. Where, as here, the police unjustifiably intrude upon a person's privacy, any evidence seized during that unconstitutional intrusion whether concealed or in "plain view" is unconstitutionally obtained. See generally Burkoff, *Bad Faith Searches*, 57 N.Y.U.L.Rev. 70 (1982).

As the improper admission of the knife and gun, which were used to link appellant directly to the crimes with which he was charged, cannot be considered harmless error, the order of the Superior Court should be reversed and the case remanded for a new trial.

FLAHERTY, J., joins in this dissenting opinion.