J-S16040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY JOSEPH MARSICANO | |
| Appellant | No. 1047 MDA 2014 |

Appeal from the Judgment of Sentence April 16, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0003916-2012

BEFORE:  PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                      **FILED MAY 06, 2015**

Anthony Joseph Marsicano appeals from the judgment of sentence entered on April 16, 2014, in the Court of Common Pleas of Luzerne County. Following a non-jury trial, Marsicano was found guilty of possession with intent to deliver marijuana, possession of a controlled substance – marijuana, possession of a controlled substance – cocaine, and possession of drug paraphernalia.[1] The trial court imposed an aggregate sentence of one day to 18 months' incarceration and a consecutive six-month probationary term, and granted immediate parole.  The sole issue raised by Marsicano in this appeal is "[w]hether [the] Trial Court erred in failing to suppress the physical evidence found in [Marsicano's] apartment as a result of a

_____

[1] 35 P.S. § 780-113(a)(30), (a)(16), (a)(16) and (a)(32), respectively.

'[p]rotective [s]weep' performed by members of the Hazelton City Police Department." Marsicano's Brief at 1.[2]  Based upon the following, we affirm.

We set forth the court's findings of facts and those conclusions of law that specifically relate to the issue of the "protective sweep":[3]

FINDINGS OF FACT:

1.  On September 24, 2012, Anthony Pacelli, a resident of a first floor apartment located at 1017 East Broad Street, Hazleton, Pennsylvania, telephoned the 911 operator to complain of an odor of marijuana in the building. (N.T. 6)

2.  Anthony Pacelli recognized the odor as marijuana from his work assignments. (N.T. 7)

3.  Anthony Pacelli believed the odor of marijuana was emanating from the basement apartment, although, he could not make a definite determination.(N.T. 7; 9-10)

4.  The basement apartment was occupied by the defendant Anthony Marsicano. (N.T. 7; 15)

5.  Lt. Leonard and Officer Tray of the Hazleton Police Department responded to the basement apartment on September 24, 2012. (N.T. 32)

---

[2] Marsicano timely complied with the order of the trial court to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, after the trial court granted Marsicano an extension of time to file the concise statement.  Marsicano's Rule 1925(b) statement is reflected on the trial court's docket, and is numbered on the docket sheet for purposes of the certified record, but is missing from the certified record.  A copy of the concise statement appears in the reproduced record.

[3] The trial court's findings are based upon the testimony provided at Marsicano's preliminary hearing conducted on November 8, 2012, which was the only evidence submitted for the suppression hearing on June 17, 2013.

6. Upon arrival the officers knocked on the door of the apartment and [Marsicano] answered. (N.T. 32)

7. Lt. Leonard detected the extremely pungent odor of marijuana emanating from the basement apartment. (N.T. 32)

8. While speaking with [Marsicano], Lt. Leonard could hear someone in the rear of the residence. When questioned about the noise, [Marsicano] denied there was anyone else in the apartment. (N.T. 33)

9. Lt. Leonard testified that [Marsicano] appeared to be under the influence of a controlled substance. (N.T.33)

10. While speaking to [Marsicano], Lt. Leonard observed a bulge in [Marsicano's] right pocket. (N.T. 33)

11. While in the presence of Lt. Leonard [Marsicano] made repeated movements of his hand toward his pocket. (N.T. 34)

12. As a result of his experience Lt. Leonard was aware that drug dealers often carry guns. (N.T. 34)

13. The presence of the bulge in [Marsicano's] pocket and the movement of [Marsicano's] hand toward the pocket caused Lt. Leonard to fear for his safety and as a result Lt. Leonard conducted a pat down search of [Marsicano] for weapons. (N.T. 34)

14. The presence of the bulge, the strong odor of marijuana and the noise coming from the apartment caused Lt. Leonard to suspect that there may be drug dealing going on in the apartment. (N.T. 33-34)

15. During the pat down Lt. Leonard detected a sandwich-size bag in [Marsicano's] pocket which he recognized from his experience to be marijuana  (N.T. 34)

16. When Lt. Leonard attempted to remove the packet from [Marsicano's] pocket, [Marsicano] forcibly grabbed the officer's hand. (N.T. 35).

17.   At this point [Marsicano] was placed in handcuffs. (N.T. 35)

18.   Lt. Leonard continued to hear noises in the apartment and noticed a figure, at which point he directed the individual to come forward and in response, Morgan Marcillio came out of the kitchen area. (N.T. 35)

19.   Upon discovery of Ms. Marcillio, Lt. Leonard did a protective sweep to determine if anyone else was in the apartment. (N.T. 36)

20.   During the protective sweep, Lt. Leonard opened a [living room] closet door; observed a Benson & Hedges gym bag, partially open, with green vegetable like substance, which he recognized to be marijuana. (N.T. 36)

21.   [Marsicano] was then taken into custody and transported to Hazleton Police Department where a search of his person revealed five small clear plastic baggies containing suspected cocaine. (N.T. 37)

22.   The items where [sic] field tested and results were positive for marijuana and cocaine. (N.T. 37-38)

CONCLUSIONS OF LAW:

….

5.   Probable cause alone will not support a warrantless search or arrest in a residence ... unless some exception to the warrant requirement is also present ... Commonwealth v. Santiago[,] 736 A.2d 624, 631 (Pa. Super. 1999)[,] quoting Commonwealth v. Governs[,] 632 A.2d 1316, 1322 (Pa. 1993); Commonwealth v. Johnson[, 68 A.3d 930 (Pa. Super. 2013)].

6.   The Pennsylvania Supreme Court has recognized the exigency created by the existence of hidden third parties during an arrest. Commonwealth v. Taylor[,] 771 A.2d 1261 (Pa. 2001) citing Commonwealth v. Norris[,] 446 A.2d 246 (Pa. 1982).

7.      The noises heard by Lt. Leonard coupled with the appearance of Ms. Marcill[i]o after [Marsicano] claimed to be alone created the exigency of hidden third parties during an arrest. Such exigent circumstances warranted the officers performing a protective sweep of the various rooms to make sure no one else was present. Commonwealth v. Johnson[, 68 A.3d 930 (Pa. Super. 2013)].

8.      One well-recognized exception to the warrant requirement is the protective sweep which is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others[.]" Maryland v. Buie[,] 494 U.S. 325, 327 (1990); Commonwealth v. Taylor[,] 771 A.2d 1261 (Pa. 2001); Commonwealth v. Bostick[,] 958 A.2d 543 (Pa. Super. 2008)[.]

9.      The Benson and Hedges bag which contained suspected marijuana was found in plain view during the protective sweep. Commonwealth v. Johnson[, supra], [Cf.] Commonwealth v. Galvin[,] 985 A.2d 783 (Pa. Super[.] 2009)[.]

10.     The contraband in the Benson and Hedges bag was lawfully seized.

Trial Court Order, 7/10/2014.

At the outset, we state our standard of review:

Our standard of review in addressing a challenge to the denial of a suppression motion is

limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression

- 5 -

court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Jones**, 605 Pa. 188, 988 A.2d 649, 654 (Pa. 2010), *cert. denied*, 562 U.S. 832, 131 S. Ct. 110, 178 L. Ed. 2d 32 (U.S. 2010) (citations, quotations and ellipses omitted). Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress. **See In the Interest of L.J.**, 79 A.3d 1073, 1083-1087 (Pa. 2013).

**Commonwealth v. Ranson**, 103 A.3d 73, 76 (Pa. Super. 2013).

Marsicano states, "[u]nder the Pennsylvania Constitution 'protective sweeps' for persons must be supported by articulable facts and inferences giving rise to a reasonable suspicion that the area to be swept harbors [an] individual posing danger to the police." Marsicano's Brief at 8, 11 (citation omitted). In this regard, Marsicano contends:

The [lieutenant] proceeded on an "inclination" the "possibility" that something may go wrong. This clearly does not meet the Constitutional requirement that First: the Pennsylvania Constitution guarantees individuals freedom from unreasonable searches and seizures; Second that [w]arrantless searches and seizures are unreasonable per se, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement; Third in a private home searches and seizures without a warrant violate the Fourth Amendment absent **PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES**. Neither factor is alleged or set forth in the instant case.

Marsicano's Brief at 11 (emphasis in original).

In **Commonwealth v. Crouse**, 729 A.2d 588 (Pa. Super. 1999), *appeal denied*, 747 A.2d 364 (Pa. 1999), this Court explained that properly conducted protective sweeps violate neither the Fourth Amendment of the

United States Constitution nor Article I, Section 8 of the Pennsylvania Constitution. Generally, a warrant is required for a lawful search of a premises; however,

> [i]t is well settled that "[u]nder emergent circumstances, protective sweeps are a well-recognized exception to the warrant requirement." **Commonwealth v. Witman**, 2000 PA Super 92, 750 A.2d 327, 335 (Pa. Super. 2000), *appeal denied*, 564 Pa. 138, 764 A.2d 1053 (Pa. 2000), *cert. denied*, 534 U.S. 815, 122 S. Ct. 42, 151 L. Ed. 2d 15 (2001).

> > A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." **Maryland v. Buie**, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 27 (1990). **Buie** sets forth two levels of protective sweeps. **Id.** at 334, 110 S.Ct. 1093. The two levels are defined thus:

> > > [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

> > **Id.** Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

- 7 -

> ***Commonwealth v. Taylor***, 565 Pa. 140, 771 A.2d 1261, 1267
> (Pa. 2001), *cert. denied*, 534 U.S. 994, 122 S. Ct. 462, 151
> L.Ed.2d 380 (2001).

***Commonwealth v. Potts***, 73 A.3d 1275, 1281–1282 (Pa. Super. 2013),

*appeal denied*, 83 A.3d 415 (Pa. 2013).

> A properly conducted sweep is for persons.
>
> It cannot be used as a pretext for an evidentiary search. It
> cannot be lengthy or unduly disruptive. It must be swift and
> target only those areas where a person could reasonably be
> expected to hide.

***Crouse, supra***, 729 A.2d at 598.

Upon review, we conclude that the evidence of record supports the trial court's factual findings and the court's conclusions of law are correct. Upon Marsicano's arrest in the threshold/hallway of the residence,[4] pursuant to the "first level" of a protective sweep, the police officers could automatically "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched[.]" ***Potts***, 73 A.3d at 1281. Furthermore, the evidence in this case demonstrates that Lieutenant Leonard had "articula[ble] specific facts to justify a reasonable fear for the safety of himself and others," thereby warranting a "second level" protective sweep that exceeded the areas immediately adjacent to the location of the arrest. ***Id.*** at 1282.

---

[4] ***See*** N.T., 11/8/2012, at 35.

The noise the officers continued to hear after Marsicano's arrest coupled with the emergence of another person from the kitchen area, after Marsicano had claimed there was no one else in the apartment, provided an adequate basis for the officers to suspect that other people might be concealed in the residence. This exigency permitted police to check areas that might harbor other potential attackers further away from the arrest. *Potts*, 73 A.3d at 1282; *see also Crouse*, 729 A.2d at 598 (protective sweep of second floor of residence was permissible because in course of executing arrest warrant on first floor, police became aware that there were persons on the second floor hidden from view). The evidence shows that the protective sweep in this case was quick and was limited to spaces where a person could hide. *See* N.T., 11/8/2012, at 50. Therefore, Lieutenant Leonard lawfully opened a full-size door in the living room, finding a small closet behind, wherein marijuana was in plain view in a partially unzipped Benson and Hedges bag.[5]

Although the purpose of a protective sweep is to assure officer safety, police officers are not required to ignore contraband they encounter in the course thereof. *Potts*, 73 A.3d at 1282 ("If, while conducting a protective sweep, the officer should … discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth

---

[5] *See* N.T., 11/8/2012, at 50.

Amendment does not require its suppression in such circumstances.");
**_Crouse_**, 729 A.2d at 593 (evidence observed in plain view during a protective sweep is admissible).

As the officers had articulable facts to believe that there was a concern for their safety, the protective sweep was permissible. Accordingly, we find Marsicano's argument presents no basis upon which to disturb the trial court's denial of Marsicano's motion to suppress.

Judgment of sentence affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2015