525 A.2d 1199

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James HAIGHT, Appellee.**

Supreme Court of Pennsylvania.

Submitted May 15, 1986.

Decided May 22, 1987.

Graham C. Showalter, Dist. Atty., for appellant.

Michael T. Hudock, Public Defender, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.*

This is an appeal from an order of the Superior Court vacating the judgment of the lower court against Appellee James Haight, and remanding the case for a new trial, 332 Pa.Super. 269, 481 A.2d 357. Appellee was convicted of burglary, criminal trespass and criminal mischief following a jury trial. Post-trial motions were denied, and Appellee was sentenced to a term of four to eight years imprisonment.

The issues presented in this case arise from portions of the Commonwealth's cross-examination of Appellee's girlfriend:

BY MR. SHOWALTER [FOR THE COMMONWEALTH]

Q Was Mr. Haight working on May the 4th, 1981?

* Reassigned to this writer.

A  No, he didn't work then.

Q  Was he working prior to that time?

A  Yes.

Q  When did he last have a job?

MR. BRANN: Your Honor, this is beyond the scope of direct examination. I object to this.

THE COURT: Well, I see nothing wrong with this. Proceed.

N.T. 337.

BY MR. SHOWALTER:

Q  To your knowledge, what income, if any, did Mr. Haight have on or about May 4th, 1981?

A  He was on assistance.

Q  How long had he been on assistance prior to that time?

A  Since December, I think.

N.T. 339–40.

The Appellant urges that this evidence of income was admissible; or in the alternative, if the evidence was inadmissible, that its admission at trial was harmless error. The Superior Court, on direct appeal, held that the evidence was irrelevant, and as such was inadmissible. Further, that Court held that the admission of such evidence was *not* harmless error.

■  Evidence is relevant when "the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence 'renders the desired inference more probable than it would be without the evidence[.]' " *Commonwealth v. Stewart*, 461 Pa. 274, 278, 336 A.2d 282, 284 (1975) (citations omitted). Appellant argues that the evidence of income was relevant to show that Appellee had a motive for the burglary, i.e. that since Appellee was poor, he needed money. Testimony of income, however, does not tend to prove or disprove any of the facts needed to establish the crime of burglary nor those of any of the other crimes of which Appellee was convicted. We

agree with the Superior Court's finding that this testimony was inadmissible.

Appellant also urges, however, that even if the evidence was inadmissible, its admission was harmless error. When there is a "reasonable possibility" that an error may have contributed to a conviction, the error is not harmless. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). The burden of establishing that such an error was harmless rests with the Commonwealth. *Id.* In this case, the Superior Court held that the Commonwealth had not met that burden. For the following reasons, we agree.

Appellee's defense was one of alibi. He claimed he was asleep in Sunbury, Pennsylvania during the time the burglary occurred. His testimony therefore directly contradicted that of the co-conspirator and his wife who testified that he participated in the burglary. Obviously then, credibility was an important consideration to the jury in determining the guilt or innocence of Appellee. The introduction of evidence which arguably tends to ascribe the element of motive to Appellee cannot be deemed to be harmless in this instance, since it would reflect directly upon his credibility. Notably, none of the stolen items was found in Appellee's possession, and the eyewitnesses to the crime did not identify or implicate Appellee. It is certainly a reasonable possibility, then, that the jury could have found the two co-conspirators who were in possession of the stolen items guilty and, believing the story of Appellee, find him not guilty. While this may be unlikely, it certainly cannot be said that it is unlikely beyond a reasonable doubt. The introduction of inadmissible evidence at trial tending to cast a new and not merely cumulative element against the Appellee, given the positions of the parties involved, puts an unmeasurable variable into the proceeding and the jury's deliberation.

Our decision in *Commonwealth v. Williams,* 470 Pa. 172, 368 A.2d 249 (1977) supports this conclusion. In that case, a Commonwealth witness made a reference to the defend-

ant's alleged drug use.[1]   Immediately after the reference was made, a curative instruction was given by the trial court to the jury; that court, however, refused to grant a mistrial when it was requested to do so by the defense.

Although we affirmed the refusal to grant a mistrial because a sufficient curative instruction was given to the jury, Justice Nix (now Chief Justice) rejected the "motive" argument that one addicted to drugs is in such need of money that he is more likely to commit a larcenous act. Justice Nix stated:

> [T]his argument does not demonstrate an intent or reason to commit a specific act charged, but merely accentuates the propensity of the accused to commit a crime of this nature.   It is this general predisposition to commit crime that this principle of law was designed to eliminate.   If we were to construe the "motive exception" as suggested, we would completely abrogate the principle relating to references to prior criminal misconduct.

*Id.*, 470 Pa. at 177, n. 3, 368 A.2d at 251, n. 3.

In the instant case, no curative instruction was given concerning the references to Appellee's income because the trial court thought they were relevant and admissible.   This strengthens the conclusion that Appellee should receive a new trial.   He should be entitled to have his credibility judged free of any prejudicial taint or inference which may have some unknown effect on this outcome, especially when his testimony directly contradicts that of his co-conspirators.   The grant of a new trial will ensure this, and will ensure that Appellee's credibility is judged only upon legally admissible evidence.   For this reason we affirm the Superior Court's grant of a new trial to Appellee.

PAPADAKOS, J., filed a concurring opinion.

---

1.   Naturally, we recognize that drug use is an illegal activity and being on welfare is not.   In *Williams,* however, as here, the reference to drug use was being used to supply a motive for a larcenous crime, as the reference to Appellee being on welfare was being used here. Further, both could have a stigmatic effect on jurors.

LARSEN, J., filed a dissenting opinion.

McDERMOTT, J., noted a dissent.

PAPADAKOS, Justice, concurring.

In judging the admissibility of evidence of lack of income, first we are guided by the fact that a fair trial requires equality of treatment without regard to economic status. *United States ex rel. Mertz v. State of New Jersey*, 423 F.2d 537 (3rd.Cir.1970). Of course, it is also true that the special nature of a crime (embezzlement, securities fraud, financial misconduct, etc.) may justify the use of such evidence in order to demonstrate knowledge and motive. *Id.*, at 541, n. 10. The accepted rule in ordinary cases, however, is to admit evidence of lack of funds prior to the time of the crime only if it is joined with proof of sudden wealth immediately after the crime. *United States v. McKenzie*, 414 F.2d 808, 809 (3rd. Cir.1969).

According to Wigmore:

The lack of money by A might be relevant enough to show the probability of A's desiring to commit a crime in order to obtain money. But the practical result of such a doctrine would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has seldom been countenanced as evidence of the graver crimes, particularly of violence.... 2 Wigmore, Evidence § 392, p. 341 (3d ed. 1940).

Our sister state, New Jersey, had adopted this rule. *State v. Mathis*, 47 N.J. 455, 221 A.2d 529 (1966):

Undoubtedly a lack of money is logically connected with a crime involving financial gain. The trouble is that it would prove too much against too many. [Quoting 2 Wigmore, Evidence § 392.) ... The State ... projected before the jury the forbidden theme that defendant had no apparent means of income and hence was likely to commit a crime for dollar gain. This was improper and injurious. 47 N.J. at 471–472, 221 A.2d at 537–538.

In weighing the probative value of motive arising from poverty against the prejudice to the defendant, we should observe carefully these sober considerations.

LARSEN, Justice, dissenting.

I agree with the majority that witness McCarthy's testimony regarding appellee's unemployment and receipt of welfare benefits was irrelevant and thus inadmissible.[1] However, I disagree with the majority's award of a new trial since the admission of this testimony depicting appellee as "poor" was clearly harmless error.

After correctly concluding that the complained-of testimony was irrelevant and therefore inadmissible, the majority states simply: "When there is a 'reasonable possibility' that an error may have contributed to a conviction, the error is not harmless. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978)." The majority's statement of our standard of review, however, "only sets the stage for the harmless error inquiry." *Story, supra*, 476 Pa. at 409, 383 A.2d at 164. In *Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246 (1982), we interpreted *Story* as establishing that an error can be harmless on any one of three grounds: 1) that without regard to inadmissible evidence, the evidence of

1. The following testimony of appellee's alibi witness Sharon McCarthy is the basis of this appeal:
    BY MR. SHOWALTER [for the Commonwealth]:
    Q: Was Mr. Haight working on May the 4th, 1981?
    A: No, he didn't work then.
    Q: Was he working prior to that time?
    A: Yes.
    Q: When did he last have a job?
    MR. BRANN [for Mr. Haight]: Your Honor, this is beyond the scope of direct examination. I object to this.
    THE COURT: Well, I see nothing wrong with this. Proceed.
    N.T. at p. 337.
    BY MR. SHOWALTER:
    Q: To your knowledge, what income, if any, did Mr. Haight have on or about May 4th, 1981?
    A: He was on assistance.
    Q: How long had he been on assistance prior to that time?
    A: Since December, I think.
    N.T. pp. 339–40. (This line of questioning had previously been objected to by appellee's counsel during a sidebar conference and the objection was overruled. N.T. pp. 338–39.)

guilt is so overwhelming that, without reasonable doubt, conviction would have followed; 2) that the inadmissible evidence was merely cumulative of other properly admitted evidence; or, 3) that the effect of the inadmissible evidence on the jury was *de minimis. Id.*, 498 Pa. at 317, 446 A.2d at 250.

In this case, the effect of McCarthy's testimony upon the jury, *if any*, was, in viewing the record as a whole, *de minimis.* The testimony in this case established a virtually identical case against appellee and his co-defendants, Yuhas and Derck. Joseph Ruskuski, a co-conspirator, testified that he and the three co-defendants at trial planned and executed a burglary on the night of May 4th, 1981. (Notes of Testimony at 119–41) Ruskuski's wife testified that, after the burglary, appellee and Derck made incriminating statements. (N.T. at 207–08) The Commonwealth presented 14 other witnesses who confirmed, to varying extents, that a burglary had occurred.

The co-defendants presented consistent alibis in an attempt to blame the burglary solely on Ruskuski. Each of the co-defendants testified that they played cards at Derck's apartment, and then were sleeping there when the burglary occurred. Derck testified that (1) Ruskuski came to his (Derck's) apartment at 3:00 a.m. the morning of May 5th, 1981; (2) Ruskuski then admitted that he burglarized the building himself, and asked Derck for help; (3) Ruskuski feared his car had been identified at the scene of the crime; and (4) Derck refused to help, and sent Ruskuski away. (N.T. at 357–59) Appellee testified that he heard parts of the discussion between Derck and Ruskuski, and confirmed that Derck sent Ruskuski away. (N.T. at 433) Derck testified that he found a calculator on his porch the morning of May 5th, 1981, and showed it to Yuhas and then to appellee. (N.T. at 360–63) This calculator was taken in the burglary, and was seized by police from Derck's closet later in the day on May 5th, 1981. Appellee and Yuhas confirmed that Derck showed them the calculator. (N.T. at 434–35, 400)

This case, then, turned solely on the issue of credibility of the respective witnesses, with Ruskuski and his wife on one side, and the three co-defendants on the other. The jury obviously found Ruskuski's account more credible than the mutually supportive alibis presented by the three co-defendants. The majority asserts that the testimony concerning appellee's income could have had an adverse effect on appellee's credibility, and thus tainted his conviction, stating:

> It is certainly a reasonable possibility, then, that the jury could have found the two co-conspirators who were in possession of the stolen items guilty and, believing the story of Appellee, find him not guilty. While this may be unlikely, it certainly cannot be said that it is unlikely beyond a reasonable doubt.

(Majority Opinion at 441.) I disagree.

If Yuhas and Derck had been acquitted in this case, and appellee convicted, then the adverse effect of inadmissible evidence against appellee would be clear. In this case, however, Yuhas and Derck were convicted upon the same evidence, and pursuant to the same jury determination of credibility, as was appellee. Any inadmissible evidence with a presumed effect on credibility was presented against Yuhas and Derck, as well as against appellee, for what affected the credibility of one affected the credibility of all co-defendants. I cannot accept, on the facts of this case, the majority theory that "the jury could have found the co-conspirators who were in possession of the stolen items guilty and, believing the story of Appellee, find him not guilty" had it not been for the testimony regarding his income. To the contrary, the defense presented in this case was an "all or nothing" defense, given the three co-defendants' consistent, interwoven alibis.

The majority suggests that the testimony concerning low financial status in this case stigmatized appellee as the testimony concerning illegal drug use stigmatized the defendant in *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1977). (Majority Opinion at 442, n. 1.) This

reliance on *Williams* is inapposite. The majority's suggestion that appellee's "being on welfare" could have had "a stigmatic effect on jurors" assumes a person is, inherently, a potential criminal simply because he is of poor financial status. I am unwilling to make that assumption, and I am certain the jury would not assume that a person on welfare is likely to steal or is as likely to steal as is a person addicted to drugs.

Thus, the Commonwealth has established, beyond a reasonable doubt, that the testimony concerning appellee's income did not effect the jury verdicts, and that the trial court's error in admitting that testimony was harmless error. *Norris, supra.*

Accordingly, I dissent.