638 A.2d 985

**COMMONWEALTH of Pennsylvania**

v.

**Wade H. CORLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 7, 1994.

Filed March 9, 1994.

372

374

Kyle W. Rude, Asst. Public Defender, Bellefonte, for appellant.

April L. Chamberlain, Asst. District Atty., Bellefonte, for Com., appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge:

This is an appeal from the judgment of sentence entered against Wade Corley after a jury convicted him of rape, involuntary deviate sexual intercourse, and related charges. Corley contends that a statement he made during the incident should not have been admitted against him and, if it was properly admitted, the trial court failed to give an appropriate limiting instruction. We have reviewed this case thoroughly and are constrained to affirm.

In the late evening of August 31, 1991, Corley was hanging around a video arcade in State College and introduced himself to a young woman, whom we will refer to as "W.P." The two talked briefly and left the arcade to purchase cigarettes. On the way back to the arcade, Corley gave W.P. a ring and kissed her. Corley later told W.P. that he had to return a backpack to a friend's apartment nearby and asked her to join him. W.P. testified that she was apprehensive about the sojourn, but accompanied Corley at his insistence.

Corley continued his aggressive courting of W.P. by kissing her while they were on the elevator riding to Corley's friend's

apartment on the seventh floor. W.P. told Corley that he was "moving too fast" and that she "just wanted to be friends." N.T. 5/19/92, at 15. Corley continued his advances in the hallway outside of the apartment and W.P. resisted again, still proclaiming that she wanted to be friends. Corley then told W.P. that since his friend was not home, he wanted to put the backpack in the laundry room next door. He also asked her to go into the room with him because he wanted to talk to her. W.P. acquiesced and Corley turned off the lights and shut the door. He then propped W.P. on top of a dryer and forcibly removed her clothes. He began licking W.P.'s chest and she began to cry. Corley told her that if she screamed or cried loudly, he would "break her fucking neck." According to W.P., he then masturbated, ejaculated on her leg, twice performed oral sex on her, attempted to coerce her to perform oral sex on him, and had intercourse with her.

Corley steadfastly denied at trial that he had intercourse with W.P. He claimed that the two were consensually "making out in the laundry room," and that while on top of the dryer, W.P. opened his pants and "sort of gave him a hand job." N.T. 5/20/92, at 39. She then asked Corley to have sex, to which he responded that he had a wife and would not philander. He claimed that W.P. began to cry at this point, that he tried to console her, and that he regretted having gone too far. He denied that he stripped W.P. of any clothing or forcibly performed oral sex on her. The jury returned guilty verdicts on all counts, making it apparent that the jurors lent more credibility to W.P.'s account of the events than it did Corley's.[1]

The testimony at issue on this appeal occurred during W.P.'s direct examination. She claimed that after Corley performed oral sex on her (but before intercourse), Corley told

---

1. The Commonwealth presented a host of police officers and investigators to testify that W.P. was extremely upset on the evening of the incident. The Commonwealth also presented forensic experts who established that the semen found on W.P.'s clothes was Corley's and that fingerprints found on the dryer belonged to Corley. Since all of this testimony is consistent with both W.P.'s and Corley's account of the events, we can only conclude that the jury accepted W.P.'s version.

her that "he had done this twice before," meaning rape. The exchange went as follows:

Q: Okay. Now after he had oral sex with you again, what happened next?

A: He pushed me or he pulled me forward.

Q: How did he do that?

A: He grabbed my ankles.

Q: Okay. Did he say anything to you at this point?

A: He said that he had done this twice before. Once to a young girl in Bellefonte.

Q: Okay. And at that point what happened?

A: He stuck his penis in my vagina.

*Id.* Corley contends that: (1) the reference to having "done it twice before" was inadmissible because it improperly referred to uncharged past criminal conduct; and (2) in the event it was admissible, the trial court erred in failing to give an appropriate instruction explaining to the jury the limited permissible use of the testimony. We will address each contention in turn.

## I.

It is axiomatic that a defendant's prior criminal conduct is inadmissible in most cases to prove that he has a propensity to commit a crime. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). An exception to the general proscription, however, allows the admission of a defendant's statement about prior criminal activity when the statement is made to intimidate or threaten a victim, and force or threat of harm is an element of the offense charged. *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985). In *Claypool*, the defendant was on trial for rape. He told his victim during the rape episode that he had been in jail. The victim testified, in pertinent part:

Q: And what, if anything, further did he say to you?

A: He said that I had—he said that I better not try to get away or to scream or holler because if I did he would shoot me and anybody else who got in his way and hopefully that

if the police came that he would get killed too because he would never go back to jail again.

       \*    \*    \*    \*    \*    \*

Q: Did he tell you why he had been in jail?

A: Yes, he did.

Q: What did he tell you about being in jail?

A: He told me he was in jail before for rape.

       \*    \*    \*    \*    \*    \*

Q: And what affect [sic] did this have upon you?

A: I was scared to death because then I knew what he was going to do to me.

*Id.* at 202, 495 A.2d at 177–178. Our Supreme Court explained that the defendant's references to his past rape should be admissible evidence:

> In a case such as this, in which the defendant himself has made his prior criminal activity or conviction—whether or not the defendant actually did engage in such criminal activity or did have such a conviction—an element of the crime with which he is now charged, our failure to allow this evidence to be admitted would grant to a whole class of criminals immunity from their crimes. If such evidence were not admissible, a criminal would only need to make sure that the fear needed for the commission of his crime emanated from a threat which only embodied a claim of prior criminal activity to be "excused" for his activity. If there were other threats of fear accompanying a defendant's claim that he engaged in prior criminal activity, the exclusion of evidence of defendant's statement would present a much weaker case.

*Id.* at 205, 495 A.2d at 179.

    Our review of *Claypool* leads us to the inescapable conclusion that Corley's statements regarding his previous rapes were properly admitted to show threat or force. Corley made the statement immediately before having intercourse with W.P. and undoubtedly meant to intimidate her. Corley argues that his case is distinguishable from *Claypool* because

he was never actually convicted of the prior rapes, and because W.P. initially told police that he made the statement *after* the incident. These claims are spurious. Whether the prior crimes were brought to conviction is irrelevant. It is the purpose behind the statement that governs its admissibility, not its truth; our Supreme Court stated as much. *Id.* Furthermore, whether W.P.'s story changed at trial is also irrelevant. The proper time to challenge her memory is during cross-examination. As offered, however, the statement was probative of Corley's effort to force W.P. to have intercourse, and eminently proper under *Claypool.*

## II.

■ Although statements regarding past crimes are admissible to show threat or intimidation, *Claypool* requires that "such evidence must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted." *Id.* at 206, 495 A.2d at 179. During its charge to the jury, the trial court instructed the jury in this case as follows:

There's evidence tending to prove the defendant has a past criminal conviction. This evidence is not evidence of the defendant's guilt. You must not infer guilt from the evidence of a prior conviction. This evidence may be considered by you for one purpose only. That is to help you judge the credibility and the weight of the testimony given by the defendant as a witness in this trial. In considering the evidence of prior conviction you may consider the type of crime committed, and how it may affect the likelihood that the defendant has testified truthfully in this case.

N.T. 5/20/92, at 110. Corley submits that this instruction did not explain the specific purpose for admitting the statements regarding Corley's criminal activity. Although we agree with this contention, we cannot grant him a new trial on this ground.

There can be no question that the trial court's instruction was improper. The trial court states in its opinion that it "specifically instructed the jury the evidence of Defendant's

prior criminal conviction was to be considered for one purpose only. That purpose was to help the jury judge the credibility and weight of the testimony given by the Defendant as a witness in this trial. The instruction was cautionary and carefully explained [the evidence's] limited purpose." This reasoning is suspect because Corley's statements were not admitted to impeach his testimony. They were admitted as substantive evidence to prove that he forced W.P. to have intercourse. This is the whole point behind *Claypool*, and we are at a loss to understand how this escaped the trial court since the record makes it very clear that the references were admitted for precisely that purpose.

Furthermore, Corley's references to "doing this twice before" were references to prior criminal activity, not prior convictions, and as such were not admissible to impeach. In order to impeach with a prior criminal act, it must be proven that a defendant's prior conviction, among other things, was for a crime involving dishonesty or a false statement. *Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (1987); *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). Here, Corley's assertions were far from being proven as convictions and, even if they were, rape is not a crime that involves dishonesty or false statements. *Commonwealth v. Benefiel*, 254 Pa.Super. 248, 385 A.2d 1003 (1978); *see Commonwealth v. Moore*, 246 Pa.Super. 163, 369 A.2d 862 (1977) (statutory rape does not involve dishonesty). The trial court's instruction, insofar as it referred to Corley's prior criminal activity, was error because it did not explain why the evidence was admitted and, furthermore, allowed the jury to conclude that Corley was convicted of prior rapes—an improper use of the statements no matter how one looks at it.

Just as important, moreover, is the trial court's failure to even make reference to the prior rapes testimony in its instruction. In *Claypool*, the Court made it abundantly clear that the jury "must" understand why the testimony is being admitted. For example, the lower court in *Claypool* gave the following instruction, which the Supreme Court heralded as

being the type of instruction that guards against improper use of the testimony:

> In the testimony of the witness presently on the stand ..., yesterday it was stated that before the first act of rape the defendant informed her that he had been in jail previously for an alleged rape. According to [the victim], the defendant told her the incident involved the wife of a cousin of the defendant.... [T]his testimony if it be accepted by the jury, that is to be believed, must be used for the sole purpose it was offered. That was to show why the will of [the victim] was overcome to make that act of intercourse and possibly later involuntary deviate sexual relations without her consent.... The general rule is that evidence of prior criminal acts cannot be considered by a jury in determining guilt for the act of that which defendant is presently being tried. On the other hand, although this evidence was generally inadmissible it was permitted to be received because it may tend to prove, if believed, one of the necessary elements that the Commonwealth must establish beyond a reasonable doubt for both the offense of rape and involuntary deviate sexual relations. That is, taking the act that it is claimed or acts that are claimed to be performed as to whether or not the will of the defendant [sic] was overcome ... [t]he testimony of the defendant's alleged prior involvement in a rape is to be considered only for what affect [sic] it had on a person of reasonable resolution to determine whether or not that by itself or with the other acts, the pointing of the gun if that occurred, the physical force if that occurred, or whatever it was that overcame her resistance, if it did, would have done so as to a person of reasonable resolution. That's the reason and the only reason that that testimony was received and it must be considered by the jury in that limited context.

*Claypool,* 508 Pa. at 202, 495 A.2d at 178, n. 1. This instruction, which was given during the victim's testimony, thoroughly explained the limited purpose of the prior criminal acts testimony. Given our Supreme Court's adoption of its language, it is an appropriate model for *Claypool* instructions.

The trial court's instruction in this case, however, fell woefully short of acceptable because it did not refer to the prior conduct as "conduct" only, was given as part of the general charge at the close of Corley's case, and incorrectly explained why the evidence was admitted. Although the jury did hear evidence that Corley was convicted of attempted theft, allowing the jury to believe that Corley was convicted of a previous rape, and allowing it to use that supposition to impeach Corley's testimony, was so prejudicial that we can have no confidence in Corley's conviction. The jury simply had no proper framework within which it could consider Corley's alleged statement.

Although our review of the record indicates that the trial court's error was palpable, the instruction, improper as it was, was given without objection by defense counsel. It is for this reason that we cannot grant Corley relief. In *Commonwealth v. Gabrielson*, 370 Pa.Super. 271, 536 A.2d 401 (1988), we held that although a proper cautionary instruction is vital to protect the potential prejudice caused by a jury's improper use of prior criminal acts, counsel is under a duty to request the instruction. Here, the trial court allowed W.P. to testify regarding Corley's statement about the prior rapes and did not caution the jury during her testimony that the evidence had a limited use. Defense counsel, however, sat silently. During the jury charge, likewise, counsel did not ask for a specific *Claypool* instruction, nor did he seek to narrow the scope of the trial court's "impeachment" instruction. It cannot be contended now that the instructions constituted reversible error.

A defendant must object to a jury charge at trial, lest his challenge to the charge be precluded on appeal. *Commonwealth v. Fuller*, 396 Pa.Super. 605, 579 A.2d 879 (1990), *alloc. denied*, 527 Pa. 585, 588 A.2d 508 (1991); *Commonwealth v. Quarles*, 361 Pa.Super. 272, 522 A.2d 579, *alloc. denied*, 517 Pa. 592, 535 A.2d 82 (1987); Pa.R.Crim.P., Rule 1119(b), 42 Pa.C.S.A. Furthermore, the defendant's failure to request a specific instruction will waive any claim that the

instruction should have been given. *Commonwealth v. King,* 287 Pa.Super. 105, 429 A.2d 1121 (1981). Even where the alleged error is "basic and fundamental," as we feel was the case here, any challenge to instruction must be initiated in the trial court. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1973). The process of preserving an objection in the trial court is essentially a rule of administration which requires an appellate court to reverse a trial court only when there has been a ruling below. Although its application in this case seems arbitrary, based on the unmistakable effect of the error, the appellate court may not grant relief on its own, and as long as *Clair* is the law, this is the way it must be.

Our Supreme Court in *Clair* was quick to mention, however, that where a defendant is deprived fundamental rights of due process, he will not sit in jail because of counsel's dereliction:

> Indeed, abrogating the ["basic and fundamental error"] doctrine in the criminal area may be even more compelling since any error that deprives a defendant due process can more properly be remedied by a claim of ineffective assistance of counsel. Our standard for effective assistance is a meaningful test and not simply a fictional standard which does no more than allow appellate courts the opportunity to select those alleged errors they wish to review.

*Clair,* 458 Pa. at 421, 326 A.2d at 274.

Here, Corley was represented by the Centre County Public Defender's Office at trial and here on appeal. He has not yet had an opportunity to claim that trial counsel's performance was ineffective and may do so on collateral attack.[2] As for now, however, we are constrained to hold that Corley's objections to the jury instructions have been waived.

Judgment of sentence affirmed.

2. Corley's current attorney does not raise the issue of trial counsel's ineffective assistance. Normally, subsequent counsel must challenge a prior counsel's stewardship at the earliest available opportunity. When both attorneys are from the same office, however, the general rule does not apply because we do not expect, nor do we generally allow, associates to challenge each other's performance.