**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Michelle BRENNAN, Appellant.**

Superior Court of Pennsylvania.

Argued April 8, 1997.
Filed June 12, 1997.
Reargument Denied Aug. 8, 1997.

William Ruzzo, Kingston, for appellant.

Peter Paul Olszewski, Jr., Dist. Atty., and Frank P. Barletta, Asst. Dist. Atty., Wilkes-Barre, for Com., appellee.

Before BECK, SAYLOR and MONTEMURO,* JJ.

* Retired Justice assigned to Superior Court.

MONTEMURO, Judge.

Following a jury trial, Michelle Brennan was convicted of involuntary manslaughter [1] in the death of her boyfriend. The trial court sentenced her to six to twelve months imprisonment and ordered her to undergo counseling and therapy. On appeal, she contends that the trial court erred by (1) allowing testimony concerning her economic status; (2) prohibiting testimony of the violent character of the deceased; and (3) refusing to instruct the jury that she was a lodger in her mother's house and therefore had no duty to retreat before resorting to deadly force. She argues that the evidence was insufficient to support verdict, or, alternatively, that the verdict was contrary to the weight of the evidence, because the Commonwealth failed to negate self-defense beyond a reasonable doubt. We reverse.

On August 18, 1995 the police were called to investigate a stabbing at 173 Winter Street, Pittston City, Pennsylvania. Upon their arrival at the scene, Officers James Sulima and Paul Porfirio discovered the victim, Robert Schumaker, dead, and Appellant, covered in blood, standing over the body. Appellant and the victim, who was also her boyfriend and father of her two children, became involved in a physical altercation at Appellant's mother's residence at 149 Winter Street; Appellant had stabbed the victim in the throat with a steak knife, and he escaped down the road where a neighbor called for help. Although Appellant admitted stabbing the victim, she gave conflicting statements concerning the reasons for her actions.

At trial Appellant asserted self-defense and offered testimony concerning prior incidents of domestic violence to which the police had responded; an existing Protection from Abuse Order (PFA Order) against the victim; the victim's prior arrest for aggravated assault on Appellant; and other evidence of the victim's violent behavior toward her. Appellant asserted that the victim had started the fight, and that she feared for her own life and that of her mother. The Commonwealth, however, produced the autopsy report which showed a defensive wound on the victim's hand. Additionally, Appellant's

mother testified that when the victim retrieved a knife from the kitchen, it was knocked from his hand, and that Appellant used the knife to stab the victim.

Appellant was convicted by a jury and her post-verdict motions were denied. This appeal follows.

Appellant first alleges that the trial court abused its discretion by allowing the following irrelevant and prejudicial testimony that she was receiving public assistance.

[PROSECUTOR]: You stated that on the night of August 17th you were preparing to go to work eventually that evening?

A: No, the next morning.

Q: The next morning?

A: Yes.

Q: Where did you work?

A: Charges Diner in Moosic.

Q: Was that your soul [sic] means of support?

A: Yes, I did receive public assistance too.

Q: Did CEO [Commission on Economic Opportunity] pay your rent up in Avoca?

[DEFENSE COUNSEL]: Objection, Your Honor.

[THE COURT]: Overruled without prejudice if the line continues.

[PROSECUTOR]: It's not going to continue, Your Honor.

[WITNESS]: The CEO does not pay people's rent. I'm on Luzerne County Housing Authority, Section 8, yes.

Q: Section 8 housing?

A: Yes.

[DEFENSE COUNSEL]: Your Honor, I ask that this line of questioning be stricken.

[THE COURT]: Mr. Vough [the Prosecutor] has—

[PROSECUTOR]: It's over, Your honor.

[THE COURT]: Overruled.

The trial court and the Commonwealth claim that the testimony was relevant to establish Appellant's whereabouts at the time

1. 18 Pa.C.S.A. § 2504.

of the incident, and that the testimony was extremely limited because it merely clarified Appellant's own responses.

■ The admission of evidence is in the sound discretion of the trial judge, and will not be disturbed on appeal absent a manifest abuse marked by an error of law. *Commonwealth v. Carter*, 443 Pa.Super. 231, 238, 661 A.2d 390, 393 (1995). To be admissible, evidence must first be relevant. *Commonwealth v. McGowan*, 535 Pa. 292, 295, 635 A.2d 113, 115 (1993). Relevant evidence is evidence that tends to make a material fact more or less probable. *Commonwealth v. Simmons*, 541 Pa. 211, 243, 662 A.2d 621, 637 (1995).

■ Testimony concerning Appellant's receipt of welfare benefits is clearly irrelevant to this case. Despite the fact that Appellant has not asserted alibi or absence from the crime scene, the trial court concluded that information about Appellant's employment and receipt of public assistance was somehow relevant to establish Appellant's location at the time of the homicide. (Trial Ct. Op. at 7). However, Appellant asserts self-defense, admitting responsibility but claiming the killing was justified. Thus, receipt of welfare benefits is probative of no fact material to the case, and makes no fact more or less probable. The trial court's admission of this testimony over Appellant's objection was palpable error.

This is not the end of our inquiry, however. We will not grant a new trial because irrelevant evidence was admitted if we are convinced that the error was harmless. Harmless error exists where the appellate court is convinced beyond a reasonable doubt that the erroneously admitted evidence could not have contributed to the verdict. *Commonwealth v. Foy*, 531 Pa. 322, 327, 612 A.2d 1349, 1352 (1992); *Commonwealth v. Story*, 476 Pa. 391, 409, 383 A.2d 155, 166 (1978). If there is a reasonable possibility that an error may have contributed to the conviction, the error is not harmless. *Story*, 476 Pa. at 409, 383 A.2d at 166. In making this determination, the court may rely only on the uncontradicted evidence of guilt, which must be so overwhelming that the prejudicial effect is insignificant by comparison. *Id.* at 417, 383

A.2d at 168. The burden is on the Commonwealth to establish the harmlessness of the error. *Id.*

Our research has revealed no cases directly on point, however, *Commonwealth v. Haight*, 514 Pa. 438, 525 A.2d 1199 (1987), is very instructive. There the defendant was convicted of burglary, criminal mischief, and criminal trespass. *Id.* at 439, 525 A.2d at 1199. At trial, on cross-examination of defendant's girlfriend, the Commonwealth elicited testimony that defendant was on public assistance when he committed the crimes:

Q: Was [defendant] working on May the 4th, 1981?

A: No, he didn't work then.

Q: Was he working prior to that time?

A: Yes.

Q: When did he last have a job?

[Defense Counsel]: Your Honor, this is beyond the scope of direct examination. I object to this.

[The Court]: Well, I see nothing wrong with this. Proceed.

[Prosecutor]: To your knowledge, what income, if any, did Mr. Haight have on or about May 4th, 1981?

A: He was on assistance.

Q: How long had he been on assistance prior to that time?

A: Since December, I think.

*Id.* at 439–40, 525 A.2d at 1199–1200. Defendant appealed, and the Supreme Court granted a new trial concluding that this testimony was irrelevant and was not harmless error. *Id.* at 441, 525 A.2d at 1200–01. The Court noted that defendant's defense was "one of alibi," and credibility would be an obvious and important consideration to the jury in determining defendant's guilt or innocence. *Id.*

■ Similarly, in the present case Appellant has asserted self-defense; clearly the jury's perception of her version of events, and more important, her credibility, would be paramount in its determination of her guilt or innocence. The prosecutor asked if her job at Charges Diner was her only means of support, to which Appellant replied that she

also received public assistance and that her housing was paid for by the county. The introduction of this testimony was not only prejudicial, but designed to impute dishonesty.[2] This testimony could have been introduced for no other reason than to suggest to the jury some stigma to be attached to the receipt of welfare, and to insinuate that Appellant had been taking advantage of the system by working and at the same time receiving both public assistance and government sponsored housing.

Although the Commonwealth suggests the testimony was admissible because it merely clarified Appellant's gratuitous responses, the transcript belies this assertion. The testimony concerning Appellant's receipt of public assistance was elicited by the Commonwealth with no prompting from Appellant. Appellant's answer simply responded clearly to the question by naming her employer. Moreover, even if questioning Appellant's means of support was a legitimate corollary to the initial inquiry, how she paid her rent and the fact that she lived in Section 8 housing was even further removed from "clarification" or "determination of whereabouts." Although the trial court finds that this testimony was severely limited in order to prevent Appellant from being prejudiced, (Trial Ct. Op. at 7), unfortunately, even the limited nature of the testimony did not prevent the damage. Moreover, the trial court failed to correct its mistake, refusing to strike the prejudicial testimony.[3]

As we have concluded that the admission of evidence of Appellant's welfare status was both irrelevant and prejudicial, it is incumbent upon us to weigh the uncontradicted evidence of guilt against the prejudicial effect of the challenged testimony and decide whether we are convinced beyond a reasonable doubt that it did not contribute to the verdict. *Story*, 476 Pa. at 409, 383 A.2d at 166. In this light, we find the record reveals the following.

When police responded to the scene, they found Appellant standing over the victim's body and covered with his blood. She gave three conflicting statements to the police implicating first her mother, then herself in the homicide. Although she told police that the victim had been fighting with both her and her mother, Appellant never used the phrase "self defense" in describing the incident. Photos taken of Appellant at the police station depict no facial bruising; however, photos taken the next morning at Luzerne County Correctional Facility show a reddish bruise on the right eyelid. Appellant testified that on several occasions she had hit the victim with her hands to defend herself, once on the nose with a tire iron.

Also, to negate self-defense, the Commonwealth presented evidence that Appellant did not reasonably fear for her safety. In the beginning of August, Appellant established telephone contact with the victim, and his sister was under the impression that he was residing with Appellant. Appellant testified that she had gotten back together with the

2. Additionally, we note that the present case presents a stronger suggestion of prejudicial impact than *Haight, supra*, where, as illuminated by the dissent, the co-defendants presented consistent alibis and implicated the defendant in the burglary. *Haight*, 514 Pa. at 445, 525 A.2d at 1202 (Larsen, J., dissenting). Here, there is no independent eyewitness to corroborate a version of events that clearly demonstrates guilt. In fact, the testimony of Appellant's mother, the only other eyewitness, tends to lend credence to her claim of self-defense. *See* discussion *infra*.

3. Further, we note that the Commonwealth has never argued, nor could it do so, that this is a proper impeachment by conviction for crimen falsi. Impeachment of a defendant by prior criminal offenses is proper where the *conviction* was for an offense involving dishonesty and is less than ten years old. *Commonwealth v.*

*Randall*, 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987). Thus, not even all convictions are considered relevant and proper impeachment of a defendant given their highly prejudicial nature. Certainly then we cannot condone the mere *suggestion* of dishonest behavior as proper impeachment of a criminal defendant. In the present case, the jury was presented with testimony suggesting Appellant's dishonesty, or attempt to exploit the welfare system. A suggestion of a crime does not rise to the level of conviction, and as such is impermissible impeachment evidence. *See Commonwealth v. Corley*, 432 Pa.Super. 371, 378–79, 638 A.2d 985, 989, *allocatur denied*, 538 Pa. 641, 647 A.2d 896 (1994)(stating that rape defendant's references to "doing this twice before" was impermissible impeachment by reference to prior criminal activity, not convictions).

victim at the beginning of August because he promised to change and wanted to start their relationship over again. Further, a police officer, who knew of the PFA Order, saw the victim enter Appellant's residence. He decided to investigate and was told by Appellant that she planned to have the PFA Order modified.

Appellant, however, presented considerable evidence concerning domestic violence in the relationship. Expert testimony was presented on Battered Women's Syndrome, and whether Appellant suffered from it. Appellant had obtained a PFA Order on the victim, who had been jailed twice for violating that order. In fact, he had been released from prison for one of these violations just two weeks before his death. A former cellmate of the victim (from his PFA violation time) wrote letters to the authorities relating that on two occasions the victim had threatened to kill Appellant for putting him in jail. Another inmate testified to the victim's violent propensities. Police also related that they had been called to Appellant's residence several times for domestic incidents, only to find Appellant alone, bruised, and claiming the victim had inflicted the injuries. On at least one occasion, she was treated at the hospital for severe injuries, but to protect the victim, never said he was responsible.

Appellant testified in her own defense, relating the history of abuse, including death threats by the victim, and her account of the events of August 18, 1995. She testified that a verbal argument escalated into a physical confrontation; the victim retrieved a knife from the kitchen and threatened to kill her. Appellant's mother, who had been in the kitchen, intervened and the victim dropped the knife. The victim started to punch the mother, and she fell to the floor, hitting her head on the coffee table, and did not move. Thereafter, Appellant picked up the knife, and with the victim standing between herself and the front door, asked him to let her go for help,[4] to leave her alone, and not to hurt her. The victim grabbed Appellant by the arms and in the ensuing struggle he was stabbed. He hit Appellant several more times, escaped outside and down the street, and collapsed in front of a neighbor's house.

This case rests on credibility. The jury was presented with three conflicting statements from Appellant herself concerning the night in question, as well as her testimony on the stand, and was called upon to evaluate the testimony and to resolve the conflicting versions of the incident to reach a verdict. The prejudicial impact of the wholly irrelevant testimony concerning Appellant's receipt of welfare is clear given the centrality of credibility in this case. The Supreme Court in *Haight, supra,* albeit in a different factual context, found that where credibility is at issue, introduction of information that an accused is receiving welfare is fatally prejudicial. Here, where this information is combined with the insinuation that the accused is not only feckless but dishonest, the prejudicial effect is inescapable. Moreover, the uncontradicted evidence of guilt is not so overwhelming as to convince us beyond a reasonable doubt that the prejudicial testimony could not have contributed to the verdict. Permitting the jury to infer that Appellant might be committing welfare fraud, and permitting them to use that supposition to impeach her testimony was so prejudicial that we can have no confidence in the validity of Appellant's conviction. *See Corley,* 432 Pa.Super. at 381, 638 A.2d at 990. Accordingly, we are compelled to vacate the judgment of sentence and grant Appellant a new trial.[5]

Judgment reversed. Case remanded for new trial. Jurisdiction relinquished.

SAYLOR, J., concurs in the result.

---

4. Appellant's mother did not have a telephone at the time of the incident. Instead, she routinely used the telephone at her neighbor's apartment.

5. Because of our resolution of this issue, we need not address Appellant's remaining allegations. However, we note that after reviewing the transcripts, briefs, and applicable law, we would find the remaining issues meritless.