J-A27005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BYRON HIGGINBOTHAM | : | No. 697 EDA 2018 |

Appeal from the Order February 13, 2018
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0006231-2017

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 13, 2019**

The Commonwealth of Pennsylvania appeals from the order granting the omnibus pretrial motion to suppress filed by Byron Higginbotham. We affirm in part, reverse in part, and remand for further proceedings consistent with this memorandum.

On the evening of June 24, 2017, a residential burglary occurred at 1405 Newton-Yardley Road, and another residential burglary was attempted at 1411 Newton-Yardley Road, in Lower Makefield Township, Pennsylvania. Appellee was arrested and charged with burglary, attempted burglary, and related offenses in connection with those crimes.

On July 24, 2017, police detectives interviewed Appellee at the Mercer County Jail regarding the crimes. Prior to the interview, the detectives read

Appellee his **Miranda**[1] rights, and Appellee agreed to provide a statement. The detectives showed Appellee the criminal complaint they had prepared, as well as still photographs taken from a video surveillance camera which captured the image of the individual believed to be the perpetrator. During their conversation, which lasted thirty-five to forty minutes, Appellee made four statements to the detectives, which one of the detectives recounted at the suppression hearing as follows:

> Statement one: "[Appellee] basically stated that he was not the person in the photographs, but he could understand how someone who's been incarcerated for 14 years and comes out with no job, no resources[,] and no money would do something like this." N.T. Suppression Hearing, 2/12/18, at 30.

> Statement two: "[Appellee] originally denied knowing Gerome Robinson . . . [e]ventually he did admit knowing Gerome Robinson. **Id**.

> Statement three: "[Appellee] said, tell you what, I'll do six months. I'll sign anything you want." **Id**. at 31

> Statement four: "[Appellee] said, I'll tell you what, come see me when I get to Bucks and we'll work something else out." **Id**.

On August 8, 2017, the detectives went to the Bucks County Correctional Facility to further interview Appellee regarding the crimes. When one of the detectives began to read Appellee his **Miranda** rights, Appellee stopped him and asked to speak with his attorney. The detectives stopped

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

the interview, and as they were preparing to leave, Appellee made the following statement to them:

> Statement five: "[Appellee], again, stated [to the detectives] that he would do six months for the offense and he would sign wherever." *Id*. at 33.

Appellee subsequently filed an omnibus pretrial motion in which he sought to suppress the statements. The Commonwealth filed a motion *in limine* seeking permission to introduce at trial Appellee's numerous prior convictions for residential burglary.[2] The trial court conducted a suppression hearing on February 12, 2018. On February 13, 2018, the trial court announced its order denying suppression on the basis that no police misconduct occurred and the officers had acted appropriately; however, it ruled that the statements were nevertheless inadmissible at trial because their probative value was outweighed by their prejudice to Appellee under Pa.R.E. 403. On that same date, the trial court denied the Commonwealth's motion *in limine*.

---

[2] Specifically, the Commonwealth sought to introduce more than one dozen residential burglary convictions as evidence of prior bad acts under Pa.R.E. 404(b), along with evidence that he received a prison sentence of ten to twenty-one years and, after serving fourteen years, was released five months before the burglary and attempted burglary at issue occurred.

The Commonwealth filed a timely notice of appeal pursuant to Pa.R.A.P. 311(d),[3] and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[4] The trial court thereafter issued its Pa.R.A.P. 1925(a) opinion.

The Commonwealth raises the following issue for our review:

> Did the trial court err and/or abuse its discretion in ruling inadmissible [Appellee's] statements to police on both July 24, 2017[,] and August 8, 2017, in their entirety, on the sole basis that the probative value of those statements was outweighed by "unfair prejudice" under Pa.R.E. 403, where the trial court ruled that the statements were not subject to suppression as there was no police misconduct, as the statements were otherwise relevant and admissible at trial, where the probative value of each statement outweighed any potential for unfair prejudice, and where any potential prejudice would be minimized by cautionary instructions, if necessary?

Commonwealth brief at 4 (unnecessary capitalization omitted).

Our standard of review is well-established:

> [T]he admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. Thus, the Superior Court may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest

---

[3] Pursuant to Rule 311(d), "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

[4] The Commonwealth has not challenged the denial of its motion *in limine* on appeal.

unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Further, discretion is abused when the law is either overridden or misapplied.

***Commonwealth v. Hoover***, 107 A.3d 723, 729 (Pa. 2014) (internal citations and quotation marks omitted).

Pursuant to Pennsylvania Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Additionally, Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Statement One

We first address Appellee's statement one, wherein he told the detectives that "he was not the person in the photographs, but he could understand how someone who's been incarcerated for 14 years and comes out with no job, no resources[,] and no money would do something like this." N.T. Suppression Hearing, 2/12/18, at 30. The Commonwealth claims it sought its introduction as probative evidence of Appellee's motive for committing the offenses, and as an admission by which the jury could infer his consciousness of guilt. Furthermore, the Commonwealth argues that Appellee challenged only the portion of statement one which referenced

"someone who's been incarcerated for 14 years" (hereinafter referred to as "the incarceration portion of statement one") as being unduly prejudicial.[5]

The Commonwealth concedes that, at the suppression hearing, it agreed to redact the incarceration portion of statement one if the trial court ruled that Appellee's prior burglary convictions were inadmissible. Nevertheless, it now argues that, despite that very ruling by the trial court, the incarceration portion of statement one was admissible as evidence of Appellee's motive and intent. The Commonwealth contends that the mere fact that Appellee mentioned incarceration does not render the incarceration portion of statement one inadmissible, particularly where, as in this case, the issue at trial was Appellee's identity as the perpetrator. According to the Commonwealth, any prejudice caused by admission of the incarceration portion of statement one "would be eradicated or minimized by cautionary instructions to the jury explaining the limited purpose for which the evidence is being admitted." Commonwealth's brief at 19.

With respect to the remaining portions of statement one, the Commonwealth asserts that it proposed the following redacted version in the event that the trial court denied its motion *in limine*: "I'm not saying the guy

---

[5] The Commonwealth claims that Appellee only challenged the remainder of the first statement on the basis that it was not reduced to writing and signed or adopted by him, and the Commonwealth did not need it. Commonwealth's brief at 16.

in the picture is me, but I can see how a guy with no job, no money[,] and no resources does something like this." N.T. Suppression Hearing, 2/12/18, at 57. The Commonwealth claims that the trial court improperly weighed the proposed redacted version of statement one, and incorrectly found that the only probative value of those portions of the statement would be to establish that Appellee had no job, no resources, and no money, and would be more likely to commit a burglary and related offenses than someone with a job, resources, or money. The Commonwealth argues that the prejudice attendant to attempting to stigmatize Appellee for being unemployed is not present here, where the Commonwealth was not seeking to introduce evidence of Appellee's actual unemployment as motive, but instead was relying on Appellee's inculpatory statements to establish his motive, intent and consciousness of guilt.

The trial court explained the rationale for its ruling on all portions of statement one as follows:

> The Commonwealth conceded the portion of the statement regarding Appellee's fourteen year incarceration should be removed. This leaves the following statement at issue: "he could understand how someone with no job, no resources and no money would do something like this." In evaluating this statement, its only probative value is to establish Appellee had no job, no resources and no money, and would be more likely to commit a burglary and related offenses than someone with a job, resources or money. This statement is unfairly prejudicial because it invites the jury to decide the case on the improper basis that Appellee committed the crimes alleged because he is unemployed and has no income. In ***Commonwealth v. Haight***, 525 A.2d 1199 (Pa. 1987), our Supreme Court specifically held the Commonwealth could not use evidence of the defendant's unemployment as a

motive for committing a burglary because it does not prove or disprove any of the facts needed to establish the crime of burglary. . . . Because Appellee's lack of income cannot properly be used to establish motive to commit a burglary, there is little if any probative value.

Trial Court Opinion, 5/11/18, at 7 (footnotes omitted).

We initially address the Commonwealth's argument that the trial court should have admitted the incarceration portion of statement one. The Commonwealth conceded at the suppression hearing that, if the trial court denied its motion *in limine* to admit Appellee's prior burglary convictions, the incarceration portion of statement one should be excluded. ***See*** N.T. Suppression Hearing, 2/12/18, at 56-57. The trial court took the Commonwealth at its word, and upon denying the motion *in limine* at the conclusion of the hearing, subsequently ruled that the incarceration portion of statement one was unfairly prejudicial, and hence, inadmissible. The Commonwealth now seeks a determination from this Court that the trial court abused its discretion in entering the very ruling to which the Commonwealth agreed. As the Commonwealth did not argue to the suppression court that the incarceration portion of statement one was admissible **even if** the court denied its motion *in limine*, it failed to preserve this claim for our review.[6] ***See***

---

[6] Since the Commonwealth agreed to redact the portion of statement one that referenced fourteen years of incarceration, the trial court did not consider whether that statement, in its original form, was relevant and admissible to prove identity or consciousness of guilt. Arguably, under the original statement, Appellee volunteered information that mirrored his own

Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Thus, no relief is due regarding the incarceration portion of statement one.

Moreover, we find no abuse of discretion in the trial court's determination that the proposed redacted version of statement one was inadmissible. In **Haight**, the defendant, like Appellant herein, was charged with burglary. During trial, the Commonwealth was allowed to elicit testimony that, at the time the crime was committed, the defendant was unemployed and receiving welfare benefits. On appeal, the defendant challenged the admissibility of that statement. The Commonwealth argued that the evidence of income was relevant to show that the defendant had a motive for the burglary, *i.e.*, that since he was poor, he needed money. Our Supreme Court concluded that evidence of indigency was irrelevant on the question of whether the defendant committed the burglary, and affirmed this Court's ruling that evidence relating to the defendant's unemployment and receipt of welfare benefits had been improperly admitted by the trial court. **Haight**, **supra** at 1200 ("Testimony of income . . . does not tend to prove or disprove any of the facts needed to establish the crime of burglary"); **see also**

_____

circumstances with sufficient specificity as to identify himself as the perpetrator, which would favor admissibility of the statement. Since the original statement is not before us for review, we do not decide whether the original statement is admissible.

*Commonwealth v. Barkelbaugh*, 584 A.2d 927, 929 (Pa. 1990) (holding that the Commonwealth cannot use evidence of unemployment to establish motive to commit a crime). As we explained in *Commonwealth v. Brown*, 911 A.2d 576 (Pa.Super. 2006):

> while evidence of indebtedness or of other financial burdens may be clearly probative of a possible motive to commit a crime for monetary gain, we must also consider whether, on the other side of the equation, the potential for prejudice outweighs the obvious relevance of the proof. We are sensitive to the fact that a blanket application of this principle would "prove too much against too many" and may encourage the Commonwealth to argue that a "defendant [with] no apparent means of income… was more likely to commit a crime for dollar gain."

*Id*. at 584.

We are mindful that there is no absolute bar to the admission of evidence of financial difficulties. *See Commonwealth v. Wax*, 571 A.2d 386 (Pa.Super. 1990). Indeed, evidence of **specific** debts may be introduced where the jury may clearly draw an inference that the financial difficulties of the defendant were material to his motive or state of mind in committing a crime, and evidence of the debt was not intended to stigmatize the appellant on the basis of his economic status. *Brown*, *supra* at 584 (affirming admission of evidence of appellant's financial difficulties where the evidence tended to establish that those difficulties were linked directly to the fact the victim fired appellant, appellant blamed the victim for his financial difficulties, appellant had no money the day before the victim's robbery/murder, yet had sufficient money to gamble and stay at a hotel immediately following the

robbery/homicide at issue); *see also Wax supra* at 389 (concluding that proof of appellant's specific and substantial immediate financial liabilities, including monies that he owed for rent of his office, gambling debts, and for the purchase of a Mercedes that had been repossessed, together with an affluent lifestyle, was evidence from which the jury reasonably could infer a motive for the commission of the crime of theft by deception in making a false insurance claim for items in his office that he removed before the fire, and was not unduly prejudicial).

Here, unlike in *Wax* and *Brown*, the Commonwealth offered no evidence of any specific debt or financial difficulties experienced by Appellee. Indeed, the Commonwealth offered no evidence from which a jury could clearly draw an inference that Appellee's financial difficulties were material to his motive or state of mind in committing the particular crimes in question. *Brown*, *supra*. Without such evidence, the Commonwealth's proposed redacted version of statement one carried the potential to stigmatize Appellee by creating the inference that since he was poor and unemployed, he needed money, and therefore had a motive to commit the crimes in question, as proscribed by *Haight*.

As we have explained, in order to demonstrate that a trial court abused its discretion in making an evidentiary ruling, the appellant must prove that the ruling was the result of manifest unreasonableness, partiality, prejudice, bias, ill-will, or made with such lack of support so as to be clearly erroneous,

or that the law is either overridden or misapplied. *Hoover*, *supra* at 729. Here, we discern no abuse of discretion by the trial court in arriving at its determination that the proposed redacted version of statement one was inadmissible on the basis that it was not relevant to prove or disprove any element of the crimes of burglary and attempted burglary, and that any probative value associated with that statement was outweighed by the danger of unfairly stigmatizing Appellee on the basis of his economic status. Accordingly, no relief is due regarding the proposed redacted version of statement one.[7]

Statement Two

The Commonwealth next argues that the trial court abused its discretion in ruling inadmissible Appellee's statement two, wherein he admitted to knowing Gerome Robinson after originally denying that he knew him. N.T. Suppression Hearing, 2/12/18, at 30. The Commonwealth claims that Appellee identified no specific grounds for his objection to this statement, and,

---

[7] We are mindful of the Commonwealth's claim that the trial court initially ruled, without explanation, that the probative value of the proposed redacted version of statement one was outweighed by its potential prejudice to Appellee, and that in its subsequent opinion, it relied on *Haight* in arriving at its conclusion that the proposed redacted version of statement one was also irrelevant because it did not tend to prove or disprove any facts needed to prove the crime of burglary. *See* Trial Court Opinion, 5/11/18, at 7 n.9. However, the fact that the trial court expanded its reasoning in its opinion is of no moment, as we may affirm its evidentiary ruling on any valid basis appearing of record. *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007).

indeed, stated that he would not challenge statement two if Mr. Robinson took the stand at trial. The Commonwealth also claims that, whereas the trial court initially ruled that statement two was inadmissible on the basis that it was unduly prejudicial, it later explained in its opinion that statement two was irrelevant, since Mr. Robinson was neither a victim nor a co-conspirator. The Commonwealth points out that Mr. Robinson was the owner of a vehicle that police observed near the scene of the burglary and attempted burglary, and which was later captured on surveillance video travelling over the bridge toward New Jersey where Appellee lives. The Commonwealth argues that Appellee's connection to Mr. Robinson and his vehicle was circumstantial evidence that placed Appellee at the scene of the crimes, thereby rendering statement two both relevant and admissible.

We agree with the Commonwealth that statement two was relevant to the issue of identity, *i.e.*, the determination of whether Appellee was at or near the scene of the burglary and attempted burglary at the time they were committed. According to the affidavit of probable cause, seven minutes before the alarm was activated at the scene of the burglary, Mr. Robinson's vehicle was observed approximately 100 feet away. *See* Affidavit of Probable Cause, 6/28/17, at 1. Additionally, Mr. Robinson told police that he had given his vehicle to Appellee two days before the burglary and attempted burglary to have brake service done on the vehicle. *Id*. Based on these averments, we conclude that statement two was clearly relevant to the question of whether

Appellee was at or near the scene of the burglary and attempted burglary. We further conclude that the potential unfair prejudice associated with the admission of statement two was, at most, *de minimus*. Therefore, the trial court's ruling that the probative value of statement two was outweighed by any unfair prejudice was clearly erroneous. Accordingly, we reverse that ruling.

Statements Three, Four and Five

As Appellee's remaining statements are similar in nature, we will address them together. In statement three, "[Appellee] said, tell you what, I'll do six months. I'll sign anything you want." N.T. Suppression Hearing, 2/12/18, at 31. In statement four, "[Appellee] said, I'll tell you what, come see me when I get to Bucks and we'll work something else out." **Id**. In statement five, when the detectives visited Appellee at the Bucks County Correctional Facility, Appellee initially invoked his **Miranda** rights by asking to speak with his attorney, but as the detectives were preparing to leave, "[Appellee], again, stated [to the detectives] that he would do six months for the offense and he would sign wherever." **Id**. at 33.[8]

_____

[8] The trial court and the Commonwealth refer to statements three and four as a single statement, however, based on our reading of the notes of testimony, we consider them to be separate statements. **See** N.T. Suppression Hearing, 2/12/18, at 31. However, this distinction in no way affects our analysis or disposition regarding those statements.

The Commonwealth argues that these statement are relevant and admissible as evidence of Appellee's consciousness of guilt. It further argues that Appellee's offers to do limited jail time for the offenses in question, following his initial denial of any involvement in the crimes, are inculpatory statements reflecting his consciousness of guilt. The Commonwealth claims that Appellee's sole challenge to the admissibility of these statements was based on the fact that statement five was made after he had invoked his *Miranda* rights.[9] *See* N.T. Suppression Hearing, 2/12/18, at 50-51. The Commonwealth contends that statement five is admissible because it was volunteered by Appellee, and was in no way solicited by the detectives. Based on these considerations, the Commonwealth asserts that the trial court's determination that statements three, four, and five "are not an acknowledgment of guilt and do not prove or disprove any of the facts needed to establish any of the crimes in this case," is unsound. Commonwealth's brief at 29 (quoting Trial Court Opinion, 5/11/18, at 8-9).

We agree with the Commonwealth. We have consistently held that spontaneous, volunteered statements like Appellee's statements to the detectives are admissible when relevant as an admission of guilt, and of substantial probative value in that Appellee, in effect, admitted that he knew

---

[9] The record reflects that Appellee's counsel also objected to statements three and four on the basis that they were not in writing or initialed by Appellee. *See* N.T. Suppression Hearing, 2/12/18, at 49-50.

precisely what he had done and the potential consequences of his conduct. For example, in **Commonwealth v. VanDivner**, 962 A.2d 1170, 1181 (Pa. 2009), the defendant shot his estranged girlfriend and her son in front of several eyewitnesses and fled into the woods. After he was apprehended and while he was being taken into an interview room, VanDivner blurted out to state troopers "[t]his is a death penalty case. I don't want the needle. Life for life. Tell the [district attorney] I will plead guilty to life. I would have killed myself if I knew Michelle was dead." **Id**. at 1180. Prior to trial, VanDivner sought to suppress the statements that he made to the troopers. He argued that his statements were intended to "initiate plea negotiations;" therefore, they were inadmissible under Pa.R.E. 410(a)(4). **VanDivner**, **supra** at 1181. The trial court found that VanDivner's voluntary, unsolicited statements to the troopers were not made in furtherance of striking a plea bargain. On appeal, our Supreme Court affirmed, finding that the trial court did not abuse its discretion, explaining:

> Here, there is no allegation by appellant, nor is there any evidence in the record suggesting that, at the time of appellant's statement, when he had just been apprehended for a murder witnessed by several people, the Commonwealth had conveyed any interest in negotiating a plea. Appellant's statement was a voluntary, unsolicited confession to the State Police troopers, not a statement made in furtherance of non-existing plea negotiations. Thus, the trial court did not abuse its discretion in denying appellant's motion *in limine*.

**Id**. at 1181-82.

- 16 -

As in ***VanDivner***, the content of statements three, four, and five was obviously relevant, as those statements were, in effect, acknowledgements of Appellee's guilt. ***See id***. at 1181. The statements had substantial probative value in that Appellee essentially admitted that he knew precisely what he had done and the potential consequences of his conduct. ***Id***. That awareness, in turn, was relevant to his pretrial claim that he was not guilty of the burglary and attempted burglary which occurred on June 24, 2017. Furthermore, there is no allegation by Appellee, nor is there any evidence in the record suggesting that the Commonwealth had conveyed any interest in negotiating a plea at the time Appellee made statements three, four, and five to the detectives, who were interviewing him regarding the crimes in question. Hence, while the statements are unquestionably prejudicial, we believe that their probative value outweighed their prejudicial effect under the totality of the circumstances presented. Accordingly, we conclude that the trial court ruling that statements three, four, and five were inadmissible was clearly erroneous. We therefore reverse that ruling.

In sum, we affirm the trial court's February 13, 2018 order as it relates to statement one, and reverse the order as it relates to statements two, three, four, and five, and remand for further proceedings consistent with this memorandum.

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with the memorandum. Jurisdiction relinquished.

Judge Stabile joins the memorandum.

Judge McLaughlin files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/13/19</u>